WILLIAM BURKE *v.* JOHN SHAW ET AL.

1. TORTS.   *Principal and agent.   Nuisance.*

   Owners of a foundry, who give the ashes to their engineer in consideration of his taking them from the furnace after working hours, are not liable for damage to a child who falls into them and is burned, although the engineer, for years before the accident, deposits them without guards in a town on an open lot, which he obtains for the purpose, opposite the foundry.

2. SUPREME COURT.   *Practice.   Affirmance.*

   If the Circuit Court decides that the action is maintainable, but gives judgment for the defendants upon other grounds, so that its ruling on this point cannot be assigned for error, the Supreme Court will nevertheless affirm the judgment for this reason, which lies at the foundation of the suit and renders a recovery impossible.

APPEAL from the Circuit Court of Yalobusha County.

Hon. J. W. C. WATSON, Judge.

*Fitz Gerald & Whitfield*, for the appellant.

A principal is liable for exemplary damages for the act of his agent or for his negligence in all cases where he would be liable if he himself had done the act.   *New Orleans Railroad Co.* v. *Bailey*, 40 Miss. 395.   A plaintiff recovers of a defendant where his servant in the course of his business acts recklessly or abuses his authority.   Cooley on Torts, 538 and n. 1.   Nor does it excuse the master that the injury occurred through the

disobedience of his order. Cooley on Torts, 537. A master is responsible for want of skill or care in his servants and guarantees their fitness. Cooley on Torts, 538, 539. And the plaintiff may show the general character of the agent for recklessness, or that he was reckless in the particular case. We confidently believe under these authorities that the court will reverse this judgment, and award the appellant a new trial. We have not dignified with notice the shuffling pretext that there was no liability because the ashes were Elliott's.

*Chapman & Chapman*, for the appellees.

If errors were committed, this court must nevertheless affirm the decision, because the result is right. *Wiggins* v. *McGimpsey*, 13 S. & M. 532; *Head* v. *State*, 44 Miss. 731; *New Orleans Railroad Co.* v. *Burke*, 53 Miss. 200. The ashes did not belong to the appellees and were not upon their lot. They belonged to Elliott, and upon this shuffling pretext we ask an affirmance. Although the Circuit Court held that this was no defence, and decided for the defendant on another ground, the judgment may be sustained upon either. If a stranger had bought the ashes and made a nuisance with them, the owners of the foundry would not be liable. The result is not different because the purchaser is their engineer, and he pays for them by his labor in cleaning the furnace. If the lot were ten miles away, the foundry men would not be liable, and its proximity does not alter the case. No recovery is possible in this action, and the judgment should be affirmed.

CHALMERS, C. J., delivered the opinion of the court.

The plaintiff, a boy of five and a half years of age, who sues by his father as next friend, while running across an unenclosed lot in the town of Water Valley fell into a heap of hot ashes, mingled with cinders and live coals, and was so badly burned as to be to some extent disabled for life. The ashes had been brought from the neighboring foundry of the defendants John Shaw & Son, and deposited upon the lot without any barrier of any sort being erected around them to guard against such accidents as befell the plaintiff in this case. This suit is brought to recover damages for the injuries sustained, upon the ground that the defendants in thus depositing their ashes, or

permitting them to be thus deposited, were guilty of a nuisance and therefore liable to those receiving injuries therefrom. Among other defences interposed by defendants, they claim that if any nuisance was committed in the deposit of the ashes, they were in no manner responsible for it, since, although the ashes came from their foundry, they were neither the owners of them, nor of the lot on which they were placed, nor had any connection with them except that they were produced in their foundry.   The facts in relation to the matter were as follows. More than ten years before the happening of the calamity here involved, the defendants had agreed with their engineer, Elliott, that if he would daily remove the ashes from their furnace, after the working hours of the foundry (or in his own time, as the witnesses express it) he might have them as his own, they having a merchantable value in the town.   Elliott thereupon sought and obtained from the owners of an un-enclosed lot, which lay across the street from the foundry, and with which the defendants had no connection, permission to deposit them there.   It is not pretended that the defendants had anything to do with this selection of a place of deposit, though they were well aware of it, since it was in full view.   They have never exercised any authority or control in the matter, and, during all the intervening years, Elliott has continued, as exclusive owner, to sell the ashes to all persons desiring to purchase.   Many sales to third persons are proved, and one to the defendants who have always recognized his exclusive ownership.

Are the defendants liable to one who has sustained injury by reason of the negligent manner in which the ashes were kept? If so, it must be either on the theory that, although they had sold the ashes to one over whom they had no control, they were responsible for any negligence of their purchaser, of which they had knowledge, and which was likely to bring harm to others; or upon the other theory, that Elliott was their agent or servant in the removal of the ashes, receiving his pay in the ashes themselves, instead of in money, but none the less engaged in their work and subject to their control. The first theory is manifestly untenable.   The ordinary seller of an article intrinsically dangerous, which ashes are not, is in

no manner responsible for the disposition made of it after he
has parted with it; nor liable to those who are injured in con-
sequence of the negligence of the purchaser in dealing with it,
though he may be well advised of such negligence.   The sec-
ond theory on which the defendants' liability must be rested is
more plausible, but depends for its soundness upon the assump-
tion that Elliott was the agent or servant of the defendants in
depositing and in failing to guard the ashes committed to his
custody.   Undoubtedly he was their agent in taking them from
the furnace, and so long as they remained upon their premises
the defendants would be liable for any nuisance created in their
deposit.   While removing them from the furnace he was their
servant, doing for them that which was indispensable to the
working of the foundry.   If they permitted him to so deposit
them upon their premises as to create a nuisance, they would
be liable to those having business there, regardless of the own-
ership of the material by which or the persons by whom it was
created.   Does their liability extend beyond this?   If the ashes
had been given to some person entirely disconnected from the
foundry, in payment for their removal from the furnace, it
seems clear that a transportation of them from the premises by
such person would have terminated the defendants' responsi-
bility for them in any shape.   Is the result changed by the
fact that Elliott was their engineer?   If I give to my domestic
servant the sweepings of my premises, in payment or partial
payment of his wages, am I responsible for any nuisance which
he may create with them after he has carried them to his own
lot?   Does the fact that I know the disposition which he is
making of them impose any liability on me?   If a farmer make
payment to his harvest-hands in a portion of the hay cut by
them, and one of them stores the portion received by him, in
open view of the employer from whom he obtained them, but
on his own premises, and in such close proximity to a fire that
his adjoining neighbor's fence or residence is destroyed, is the
farmer made liable either by having given the hay to his
employee or by his knowledge of the manner in which his em-
ployee was dealing with it?   To ask these questions is to
answer them; and it seems difficult to draw a satisfactory
distinction between them and the case before us.   If Elliott

had not been the employee of the defendants in other respects, or if, being their employee, he had transported the ashes to his own lot at a distance of a mile from the foundry, there would seem but little pretence for seeking to make the defendants suffer for the way in which he stored them, although they were perfectly aware of his negligence with respect to them. It is the double fact of the proximity and of the general employment that confuses the mind; and yet neither of these things really affects the principle involved. Elliott was the absolute owner of the ashes, as soon as they left the furnace, free to do with them as he pleased, subject in no respect to the control of the defendants, and alone responsible for his conduct with regard to them, whether stored on an adjoining lot, procured for the purpose, or transported to one already owned by him a mile distant. In no point of view can we see how the defendants are to be made liable for the manner in which another has dealt with his own.

The case did not go off in the court below on the question here discussed. The learned circuit judge rejected the view we have expressed, but the defendants nevertheless had a verdict on grounds not alluded to by us. As his ruling on the question upon which we rest the case was favorable to the appellant, he of course did not assign error with regard to it, and, as the appellees had judgment below, they of course cannot assign error at all. Ordinarily, therefore, we would not notice it; but as it lies at the very foundation of the action, and is in our opinion absolutely fatal to it, we have passed by the errors assigned, because, no matter how they might be decided, no recovery by the plaintiff against these defendants can ever be maintained.

*Judgment affirmed.*