## OSCAR WILSON v. ALABAMA GREAT SOUTHERN RAILROAD COMPANY.

1. HEALTH AND QUARANTINE.   *Board of health.   Executive committee. Laws* 1894, *p.* 33.

   The executive committee of the state board of health, under Laws 1894, p. 33, providing for the committee, could not perform official duty unless the three members thereof were present.

2. SAME.   *Orders. Reasonableness. Judicial question.*

   The orders of the state board of health must stand the test of reasonableness; and whether an order be reasonable or unreasonable is a judicial question.

3. SAME.   *The case.*

   An order of the state board of health prohibiting all persons from getting off of trains and boats at any point in the state, predicated on its face of the fact that there is "yellow fever at several places along the coast, in this state, and several cases of yellow fever at Edwards, and reported suspected cases at various other places through this state," is unreasonable and void.

4. SAME.   *Railroads must take risk.*

   A railroad company must take the risk of the validity of orders of the state board of health, if it yield obedience to the order alone.

5. SAME.   *Vis major.*

   If a quarantine order of the state board of health be void, but be maintained by *vis major*, a railroad company may yield thereto without actual collision, and may defend a suit against it by showing that the real cause of its action, or failure to act, complained of in the suit, was such uncontrollable necessity.

6. SUPREME COURT PRACTICE.   *Objections not made below.*

   The rule that objections not made in the court below cannot be availed of in the supreme court, does not apply if it be apparent that the plaintiff has no cause of action on the one hand or the defendant no defense on the other.

FROM the circuit court of Lauderdale county.

HON. GREEN B. HUDDLESTON, Judge.

Oscar Wilson, the appellant, was the plaintiff in the court below; the railroad company was defendant there. Wilson's cause of action grew out of the following facts: In September, 1897, he was in Nashville, Tennessee, and sought passage by railroad from that city to Meridian, Mississippi. He was advised to get off the train at Chattanooga, Tennessee, and informed that he could not be carried into Mississippi. He nevertheless came on to Birmingham, Alabama, where he was again informed of the Mississippi quarantine. He was, however, carried to Livingston, Alabama, not far distant from the Mississippi state line, where he was made to elect to get off of the train or be carried through Mississippi into Louisiana, although he had a ticket which ordinarily would have entitled him to be carried to, and allowed to disembark at, Meridian, Mississippi, and he also had a health certificate. Plaintiff got off rather than be carried to Louisiana. The railroad company defended upon the ground that the state board of health of Mississippi had before that time made the order quoted in the opinion of the court prohibiting by its terms all persons from getting off of railroad trains in the state. The court below gave a peremptory instruction for the defendant, the railroad company, and Wilson appealed to the supreme court.

*W. T. Houston,* for appellant.

The state of Mississippi did not have the power to make or issue such an order as the one counted upon by the railroad company, and which is claimed to have been promulgated by the state board of health. The same is void in so far as it intended to affect persons traveling from without into the state; it is an attempted regulation of interstate commerce. *Re William H. Smith et al.,* 28 L. R. A., 821; *Hurst* v. *Warner,* 26 L. R. A., 492; *State* v. *Speyer,* 29 L. R. A., 575; *Kosciusko* v. *Slomburg,* 68 Miss., 469; *Kansas City, etc., Railroad Co.* v.

o

*Riley,* 68 Miss., 769; *Town of Greensboro* v. *Ehrenreich,* 80 Ala., 579; *Town of Greensboro* v. *Ehrenreich,* 60 Am. Rep., 130; *Lawton* v. *Steele,* 152 U. S. Rep., 133; *Railroad Co.* v. *Husen,* 95 U. S., 465; *Minnesota* v. *Barber,* 136 U. S. Rep., 313; *Brimmer* v. *Rebman,* 138 U. S. Rep., 78; *Hender* v. *Mayor of New York,* 92 U. S. Rep., 259; *Bowman* v. *Chicago, etc., Railway,* 125 U. S. Rep., 465; *Chicago, etc., Railway Co.* v. *Hoyt,* 149 U. S. Rep., 14; *Smith* v. *Turner,* 7 How. (U. S.), 393; *McCulloch* v. *Maryland,* 4 Wheat. (U. S.), 427; *Brown* v. *Maryland,* 12 Wheat., 437.

Even if the state possessed such power, it never conferred or attempted to confer such power on the board of health. *Re Smith,* 28 L. R. A., 821. There was a step taken in this direction in 1898, after appellant's rights had become fixed.

The state could not delegate this power to the state board of health. *O'Neill* v. *American Fire Insurance Co.,* 26 L. R. A., 715; *Dowling* v. *Lancashire Ins. Co.,* 31 L. R. A., 113; *Field* v. *Clark,* 143 U. S., 681.

The order was void, because unreasonable. *State, ex rel. Adams,* v. *Burdge,* 37 L. R. A., 162.

If the state board had such power, it did not exercise it. The alleged order was not made or issued by the board; it was made by the executive committee of the board. The statute granted the power, if at all, to the board.

Two members of the executive committee could not make law without the presence of the third. Such a trust must have required the concurrent judgment of the three. *Chicago, etc., Railway Co.* v. *Hoyt,* 149 U. S., 14; *Heirn* v. *McCaughan,* 32 Miss., 17; *Demison* v. *McDaniel,* 25 Miss., 85.

*Fewell & Son,* for appellee.

The only question properly before this court, because none other was raised in the court below, is this: Are the statutes of the state establishing and defining the powers of the state board

of health, violative of the interstate commerce clause of the constitution of the United States?

There is no conflict between the federal statutes and our state laws; on the contrary, an act of congress (27 Statutes at Large, 449) requires the United States health officers to co-operate with the state health authorities in the matter of quarantine regulations. The United States, therefore, have not chosen to exercise the power of regulating commerce between the states touching quarantines, but have left to the states to make such regulations on the subject as they may have seen proper. The case falls within the police power of the state. *Moore* v. *Illinois,* 14 How. (U. S.), 13; *Patterson* v. *Kentucky,* 97 U. S., 501; *Morgan, etc., Co.* v. *Louisiana Board of Health,* 118 U. S., 455.

The appellee would have violated the law if it had permitted appellant to leave its cars in Meridian. The appellant owes his misfortunes to forces which the appellee could not control. It would be a very delicate and dangerous thing for any person, especially a common carrier, to undertake to say arbitrarily that orders of the health authorities, like the one in question, need not be obeyed. Disobedience might result in losses and calamities, not to the carrier alone, but to the community awful to contemplate.

Argued orally by *W. T. Houston,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

Appellant's right were fixed September 23, 1897, and are not affected by the provisions of the second and ninth sections of the act of 1898 (Laws 1898, p. 93).

The presence of all three of the members of the executive committee of the state board of health was necessary to a valid order on September 15, 1897, when the order in question was made (Laws 1894, chap. 38, p. 33). This is made clear, as the legislative purpose, by the amendment (Laws of 1898, p. 93,

sec. 2), providing, for the first time, that "the presence of two members of the executive committee" would do thereafter. The order in question was made by only two members, it not being shown that three were present. Nor is it shown that the board appointed the chairman. Had three been present, and two made the order, this objection would have been obviated.

But the order must be held void for unreasonableness also. All orders of the board of health must stand the test of reasonableness. This order provided: "On account of yellow fever at several places along the coast, in this state, and several cases of yellow fever at Edwards, and reported suspected cases at various other points through this state, until further ordered by this board, no person will be allowed to get off trains and boats at any point or station in the state of Mississippi," etc., the rest of the order not modifying in any way this provision.

Now, the appellant was from Meridian, a noninfected point, had a duly issued health certificate, and was returning from Nashville, a noninfected point, to his home in Meridian, on a valid excursion return ticket. He had not been exposed to infection. The order was not that no person who had been exposed to infection, or who came from an infected point, or who was destined for an infected point, should be allowed to come into the state, but that no person whosoever, from any point whatsoever, should be allowed to get off anywhere in the state. The authorities are uniform that this sort of an order is wholly indefensible. It has been expressly so held in this state (*Kosciusko* v. *Slomberg,* 68 Miss., 469, which also holds that the reasonableness of these orders is, of course, for the court to determine), and it has been so held in many authorities, among which see specially: *In re Smith,* 146 N. Y., 68, s.c. 28 L. R. A., 820; the note to *Hurst* v. *Warner,* 26 L. R. A., 484; and *State* v. *Burdge,* 37 L. R. A., at p. 162 (2), citing with approval *Kosciusko* v. *Slomburg,* 68 Miss.,

469.    See particularly the reasoning of the court in *In re Smith,* supra, at p. 823.

Regard must be had to the maxim, *"Salus populi suprema lex,"* of course.    But regard must also be had to the liberty of the citizen, and both principles must be given reciprocal play.    The public health must be vigilantly cared for, but with due caution that no order intended to secure it shall be so sweeping and arbitrary as to interfere unreasonably with the citizen's right of return to his home, neither he nor it having been exposed to infection.

With every disposition to uphold all reasonable regulations of our efficient and faithful board of health, we are constrained, by the oft-settled doctrines applicable, to declare this order void for unreasonableness.    Doubtless this order would not have been given its unconfined sweep but for the hurry and excitement of the times.    The railroad company must take the risk, as all citizens do, as to the validity of such orders, when it yields to the order alone; and when its defense is, not that it yielded obedience because only of the order, but because also of *vis major*—a shotgun quarantine, for example— its defense will be maintained if it shall appear that such *vis major,* such uncontrollable necessity, was the real cause of its action.    It need not go to the extent of actual collision with force marshaled by necessity.    But it must show its action was due to such force existing and capable of controlling its actions.

But here it is clear that was not the case, and the action of the appellee was due wholly to the void order.    The appellant was not even brought to the state line, and was once put off in Tennessee, and actually did come into Meridian without hindrance in a private conveyance after he was put off.    It was not shown even that the order was temporary, or that it was ever rescinded.

Ordinarily it is true that objections not specifically made

below cannot here be relied on.    The reason of that rule, which gives it its life, is that the opposite party may have opportunity to meet and obviate the objection.    But where the court can see, as to the plaintiff, that he has no cause of action on which a judgment can be legally pronounced, or, as to the defendant, that he has no defense which the law can allow to stand, there is presented, in both cases equally, a case wherein it is not legally possible to obviate the fatal fault, if opportunity to do so had been given, and this court must in such case act upon the fatal infirmity presented by the record.    It was error to grant the peremptory instruction.

*Reversed and remanded.*