Samuel M. McLemore et al v. Peter Anderson.

[43 South., 878; 47 South., 801.]

1. TAXATION. *Tax sales. Laws 1863, p. 111, ch. 7. Wrong day.*

> Under laws 1863, p. 111, ch. 7, fixing the first Monday of July for tax sales, a sale made on Thursday following the day fixed is void, in the absence of evidence that sales were begun on the proper day and continued until the day of the sale in question.

2. SAME. *Sale to the state. Statutes of limitation. Laws 1859–60, p. 213, ch. 4, Code 1871, § 1709. Waiver by state. Laws 1888, p. 42, ch. 5. Subsequent purchaser from state.*

> Where in such case the void sale was to the state, although the title became protected by the statutes of limitation (Laws 1859–1860, p. 213, ch. 154; Code 1871, § 1709), the state could waive the protection and did so by laws 1888, p. 42, ch. 5, in favor of the holders of levee tax titles, and a subsequent purchaser from the state cannot invoke the statutes so waived.

3. SAME. *Auditor's deed. What conveyed by. Misrecital. Evidence.*

  An auditor's deed, made before Code 1892 became operative, con-
  veyed any title the state had previously acquired by tax sale, al-
  though it misrecited the date of the sale to the state; but mere
  proof of a previous sale is insufficient to show that the date of
  the sale named in the deed was a misrecital.

4. SAME. *Endorsements on auditor's deed. Code* 1880, § 562. *Objec-
  tions on appeal.*

  That an auditor's deed fails to contain the endorsement of taxes,
  damages, fees and commissions expressly required by Code 1880,
  § 562, is not a mere irregularity, and objection, although made for
  the first time in the supreme court, can be predicated of the
  failure.

5. SAME. *Statute of limitation. Code* 1880, § 539. *Possession taken
  pending suit.*

  The three years' statute of limitations, specially applicable to tax
  titles, Code 1880, § 539, cannot be invoked in a suit to confirm a
  tax title by a grantee whose possession began pending the suit,
  although he was not a party to the suit when he went into pos-
  session and three years elapsed thereafter before a cross-bill was
  filed to cancel his title.

FROM the Chancery Court of Quitman county.

HON. CARY C. MOODY, Chancellor.

Anderson, appellee, was complainant in the court below; Mc-
Lemore and others, appellants, were defendants there. From a
decree dismissing defendants' cross-bill, the complainant having
voluntarily dismissed the original bill, the defendants appealed
to the supreme court.

The facts are fully stated in the opinion of the court.

*T. E. Williams* and *McWillie & Thompson,* for appellants.

The cross-complainants on January 9, 1878, purchased the
land from Gibbs and Hemingway, Commissioners, appointed to
sell the lands held by the Liquidating Levee Board, in the case
of *Green* v. *Gibbs,* in the chancery court of Hinds county.

On March 2, 1888, before the cross-defendant Anderson
bought from the auditor, the legislature of Mississippi passed an

act by the first section of which it was provided that the deeds made by said Gibbs and Hemingway as commissioners in said cause "should be taken and held in all the courts of the state as *prima facie* evidence that the land embraced was duly and legally sold to said board of (liquidating) levee commissioners up to and including the sales of 1874, for the taxes due and unpaid thereon and that the title conferred by said deeds is to all intents and purposes valid.   Laws 1888, p. 41.

It will be observed that the sales list, offered to show title in the state under the abatement act, purports to be a copy of a copy of the original sales list of the tax collector of Tunica county verified by the auditor of public accounts, and not a certified copy of the original sales list, which original the act in question required to be forwarded to the auditor who thereupon became the custodian thereof.   Laws 1875, p. 16.

The legal custodian of the original sales list never saw it, and his certificate can give no force to an alleged copy made by another person.   The original sales list and that alone was the auditor's warrant for selling the land.

There being no sufficient showing as to a sales list and therefore no sufficient showing of a sale in 1875, the auditor's conveyance to cross-defendant which was based on an alleged copy and not on the original list made by the tax-collector, as contemplated by the statute finds no support in the so-called sale under the abatement act.

There remains only the sale to the state in 1867 to support the auditor's conveyance, but in order to give effect to the provision of the Act of 1888 making the Commissioner's deeds *prima facie* evidence that the land was "duly and legally sold to the Liquidating Levee Board for taxes due and unpaid" we have to assume that the state's title under the sale of 1867 had been divested by redemption or sale prior to the conveyance to said board in 1869, just as in the case of a sale of a sixteenth section for unpaid taxes it was assumed that there had been a lease by the school trustees in order to give effect to Code 1871, § 1300,

making tax collectors' deeds and a sales lists of lands struck off to the state *prima facie* evidence of a valid assessment and sale. *Chamberlain* v. *Lawrence County,* 71 Miss., 949, 15 South., 40.

Moreover, the auditor's deed under which cross-defendant claims recites a sale to the state for taxes in 1879 as authorizing that officer's act in making the conveyance, and no sales list for that year was offered in evidence. It will not do to say the deed is supported by sales to the state in 1867 and 1875, for apart from the matter already presented which disposes of those sales, this is not a case where a mere showing of any anterior sale to the state will suffice. A sales list showing that the land was struck off to the state in 1879 should have been produced in evidence, or proof made that the land had not become subject to taxation and sale for delinquency in 1879.

This court has decided that where the state *has title* under any sale for taxes, the auditor's deed will convey the same to a purchaser although there be a misrecital therein as to the real date of the sale to the state. *Caruthers* v. *McLaran,* 56 Miss., 371. But it has never held that when an Auditor's deed recites a sale for taxes at one time the mere proof of an earlier sale will also prove that the date named in the deed is a misrecital. It is settled that one relying on a deed showing a sale for the taxes of a particular year can not claim a misrecital as to the year without proving it. *French* v. *McAndrews,* 61 Miss., 187, 193. In the case last cited it was shown that the land was in fact sold to the state in March 1875, and there was no deliquency for any year prior to 1874. So that there could not have possibly been any sale between March and May, 1875, and no sale could have been made in May, 1875, except under the abatement act, which contemplated the sale of no lands that were not delinquent for taxes prior to 1874. As there could have been no other sale between March and May, and the May sale was clearly void, there could be no other pretense of authority for the auditor's conveyance than the March sale. The same state of case existed in

*Witty* v. *Gamble,* 55 Miss., 27, cited as authority for the position taken in *Caruthers* v. *McLaran.* To illustrate let us suppose that the cross-defendant produced a tax deed from the land commissioner dated in 1906 that recited a sale in 1904, for the taxes from 1845 till 1906 without any proof to show that the recital in the deed of the latter year was an error? Lands in the Mississippi Delta have been the subject of tax sales to a very large extent and proof that land was held by the state at a remote period cannot reasonably be said to overcome a recital in an auditor's deed to the effect that a subsequent sale had occurred. It is true in a certain sense that the auditor's deed passes the title that the state may have had under any tax sale, but the production of an old tax deed to the state does not so conclusively show that the title remained in the state as to overcome the auditor's recital to the contrary in the deed under which the party showing the old sale claims.

It should also be shown by proof that there had been no divestiture of the state's title, and the decisions rendered in cases where on the facts in evidence and the existing state of the law there could not have been a valid sale at the date recited nor any intervening sale do not conflict in the least with this view. The question is one of proof and not of presumptions.

Apart from this, the auditor, under Code 1880, § 561, was not authorized to sell for any sum less than the amount of all the taxes for which the land was sold and all taxes accrued since the sale together with twenty-five per cent. of the amount of taxes for which the land was sold; and where he recites in his deed a sale long after the only sale shown in evidence, it is clear that he predicated his conveyance of a payment of much less than the required amount. His recital in this case of a sale in 1879 is just the same thing as a recital that he collected no accrued taxes further back than 1879. The state cannot be robbed of its dues on an assumption contrary to the recital of the officer who made the deed. It was never intended by the court in any of its decisions that proof of a sale to the state long anterior to the one

recited as the basis of the auditor's deed should be taken to show payment of all taxes back to the old sale. A sale for less than the amount required by law to be paid renders the tax deed void, the question being one of power to convey. *Murdock* v. *Chaffe,* 67 Miss., 740, 7 South., 519.

We do not lose sight of *Railway Co.* v. *Buford,* 73 Miss., 497, 19 South., 584, but the tax claimant cannot blow both hot and cold. He cannot say that he stands on the sale to the state in 1867 or 1875 to show title and that he stands on the sale to the state in 1879 to measure the amount of money necessary to effect a purchase. In the *Buford case* it appeared that there had been a sale in 1882 for the taxes of 1881 and the purchaser relied on the sale in 1882 though he did not show payment of taxes back to the apparent earlier forfeiture in 1874. He was not claiming that the recital of his auditor's deed of a sale in 1882 was false.

As provided by Code 1880, § 562, the failure to the auditor to endorse the whole amount of taxes received by him made his sale invalid, and such being the case it is very clear that the legislature intended that his failure in fact to collect the whole amount should have the same effect.

The foregoing considerations seem to suffice to dispose of this question, but it might also be noted that this court has lately held that evidence *aliunde* is not competent to show the day of sale recited in a tax deed is a mistake. *Bower* v. *Chess,* 83 Miss., 218, 35 South., 444.

As seen, the deed from the state recites a sale for taxes in 1879 and as no sales list for that year was produced the complainant and cross-defendant had to rely absolutely on the validity of the sale to the state in 1867. That sale was made on July 4, 1867, and as will be seen by Stern's U. S. Calendar, the 4th day of July, 1867, fell on Thursday. Under the statute then in force tax sales had to be made on the first Monday in July. Laws 1863, p. 111. *Hardie* v. *Chrisman,* 60 Miss., 671. There is absolutely nothing in the record to show that the sales were continued from day to day from July 1st, the first Monday of that

month, till July 4th, and it has been conclusively settled that in such case a deed naming a day of sale other than that fixed by law is void. *Mead* v. *Day,* 54 Miss., 58; *McGehee* v. *Martin,* 53 Miss., 519; *Harkreader* v. *Clayton,* 56 Miss., 383; *Mayer* v. *Peebles,* 58 Miss., 628; *Byrd* v. *McDonald,* 28 South., 847.

The cross-defendant's effort to avail of the three years' limitation arising on actual occupancy under Code 1880, § 539, (Code 1892, § 2735), cannot succeed for several reasons, even if the proof of actual occupancy be treated as sufficient.

In the first place it is not pretended that there was any actual occupancy prior to the beginning of the cause, and the cross-bill seeking cancellation of cross-defendant's claim was filed by leave of court on January 17th, 1900, and amended later. The dismissal by complainant of his bill did not carry the cross-bill with it, the cross-bill being in express terms retained by the order of dismissal. *Sigman* v. *Lundy,* 66 Miss., 522.

It is not the case of a dismissal of a cross-bill, which has been held to carry with it the answer thereto. It would be a most abominable state of things, wholly inconsistent with equity, if a complainant could implead a defendant in a proceeding like the one before us and when the defendant had made the proceeding one for affirmative relief to himself by way of cross-bill seeking the cancellation of complainant's claim of title, carry the case along until the defendant's right to institute a new proceeding would be barred and then defeat the consideration of the case made by the cross-bill by the simple proceeding of dismissing the bill of complaint.

In the second place, as already shown, the lands were not subject to taxation when sold for taxes, and this court has plainly held that in such cases the three years limitation in favor of actual occupancy has no application. *Hoskins* v. *Railroad Co.,* 78 Miss., 768, 29 South., 518.

We do not see how the three years limitation of the Code of 1880 can be predicated in this case of the possession of Lindsay

and Nolan so as to defeat the right of the cross-complainants. They were purchasers *pendente lite,* the suit having been begun by their grantor, Anderson, on June 17th, 1898, while they purchased on December 2nd, 1898. Anderson continued to prosecute the suit, presumably for their benefit, until long after the first cross-bill was filed, and until more than three years after their adverse possession began. To allow Anderson to set up for his vendees the three years limitation under such circumstances is equivalent to saying that judicial proceedings may be availed of to set traps. The cross-bill was filed on January 17th, 1900, and Anderson dismissed his bill on November 18th, 1902. As they purchased the property *pendente lite,* they were put on notice of and were affected by everything that appeared in and might be had or done in the proceeding of their grantor, whose bill set up the adverse claim of the present cross-complainants and alleged possession in their tenant. It is quite immaterial that Lindsay and Nolan were afterwards formally brought into the case. In contemplation of law they were already parties. The title under which they claimed was assailed in a suit brought to quiet title that was pending when they bought, and such assault was begun in less than two years from their purchase.

The act of 1888 did not deal only with the commissioner's deeds making them *prima facie* evidence of a valid sale to the board as provided in section 1. It went also directly in section 5 to the sales to the board themselves and validated all of them except as against certain persons who had paid all taxes and were at the passage of the act in adverse possession of the land affected by such sales, to which excepted classes it cannot be pretended that the cross-defendant belongs. Laws 1888, pp. 41, 42. It was entirely competent for the state to validate these sales as against any claim of her own, and a purchaser from the auditor after the passage of the act, as the cross-defendant was, is in no attitude to dispute either the propriety of the state's action or its effect in making valid all sales that had been made to the board. He will be taken to have bought from the auditor with full

knowledge of the law. The act of 1888 was passed March 2, 1888, and the cross-defendant purchased from the auditor on April 13, 1888.

It cannot be objected that this validating of liquidating levee sales inured to the benefit of those only who obtained the state's release under sec. 2 of the act, for under that section the auditor was not authorized to release to any save purchasers under *Green* v. *Gibbs,* and section 5 expressly validates all sales to the board whether the land had been purchased from the board before the institution of the *Green* v. *Gibbs* proceeding or from the commissioners in that proceeding. It provides that sales to the board shall be impeached for no cause except that the tax for which the land was sold had been paid.          -

What is the use to talk about the curative effect of the limitations of 1860 and 1871 when after the expiration of the prescribed periods the state in whose favor they ran has waived the benefit of them and declared the sale sought to be affected by the acts valid and effectual as a means of vesting a present title?

*Perkins & Winston,* for appellees.

The tax-collector's deed to the state of July 4th, 1867, has been made valid by the curative act of 1860, and by Code 1871, § 1709.

One of the muniments of title relied on by the defendants to the cross-bill is a tax collector's deed to the state of Mississippi of date July 4th, 1867. That deed is regular in all respects except that it bears date July 4th, 1867, and recites that the land was sold for taxes on the day of the date of the deed. The law governing such sales required them to be made on the first Monday in July which was the first day of July. The sale was doubtless adjourned from day to day until Thursday, the 4th, but the deed does not recite such adjournment.

In *Nevin* v. *Bailey,* 62 Miss., 433, construing Code 1871, § 1709, the court at page 436 says: "Where, as in this case, the objection is made that the sale was made on the wrong day,

the statute is to be read as especially and distinctly authorizing the sale to be made on the day named in the law, or on that day on which it was made."

In *Sigman* v. *Lundy,* 66 Miss., 522, 6 South., 245, Code 1871, § 1709, was held to be a continuation of the curative part of section 8 of the curative act of February 10, 1860. The defects which the court in *Sigman* v. *Lundy* held were cured by said act of 1860, and by said section 1709 were that the sale was not made at the door of the court house, and that the land was not offered in the smallest legal subdivisions.

In *Gibson* v. *Berry,* 66 Miss., 515, 6 South., 325, Code 1871, § 1709, was held to have cured a failure to offer the land in the smallest legal subdivisions at a sale made in 1876.

In *Cole* v. *Coon,* 70 Miss., 634, 12 South., 849, said section 1709 was held to have cured the objection that there was an excessive levy of taxes for the year 1875, the land having been sold in 1876.

The sale to the state on May 10, 1875, was proved by competent evidence, and was in all respects valid.

Another muniment of title relied on by the defendants to the cross-bill was the sales list showing the sale of the land to the state on May 10, 1875, under the abatement act.

It is now objected in the supreme court that the list of lands sold to the state on May 10, 1875, is a copy of a copy and is not a copy of the original; but no such objection was made in the court below.

The objection now made in this court for the first time is not tenable for the following reasons:

(a) Any technical objection to the admissibility of the auditor's certified copy should have been made in the court below. The record does not show that the objection now made was made in the court below, or, if made, that any exception was taken to the ruling of the court. The objection, therefore, was waived. 1 Wigmore on Evidence, § 18.

(b) The auditor's certified copy was by no means lacking in

probative value, if technically inadmissible, if it had been ob-
jected to.    (2 Wigmore on Evidence, § 1274.)    And having
been admitted in evidence without objection, it was amply suffi-
cient to prove the sale under the abatement act.    It is too late
now to make the technical objection which should have been
made in the court below.

(c)  The auditor's certified copy not only had probative value
but was technically admissible.

"All public officers in this state having the charge or custody
of any public books, records, papers, or writings, are authorized
to certify copies of the same, which copies shall be received in
evidence" in all cases where the original or a sworn copy would
be evidence.    Code 1892, § 1791.

The certified copy made by the clerk was on file in the audi-
tor's office and was in his charge as a public record, paper or writ-
ing.    The auditor had authority to certify a copy thereof.    The
auditor's copy was as admissible as the clerk's copy in his office,
and the clerk's copy was admissible because the original list was
required by the abatement act to be held with the clerk and to
be by him recorded.    *Gamble* v. *Witty,* 55 Miss., 33.

(d)  The failure of the clerk to transmit the original list of
the lands sold to the state under the abatement act to the au-
ditor did not render the abatement sale invalid.    The abate-
ment act required the tax collector to make and certify and
to file with the clerk as required by Code 1871, § 1698, the list
of lands sold to the state, but the abatement act differed from
the Code of 1871, in requiring the clerk, after recording the list,
to forward to the auditor the original list instead of a certified
copy thereof.    Laws 1875, p. 14, Sec. 9, p. 16, Sec. 13.

Under the Code of 1871, it is not the recording of the list, or
transmission to the auditor of a certified copy thereof, which
vests title in the state: "It is the list certified and returned to the
clerk which vests title."    *Gamble* v. *Witty,* 55 Miss., 33.

There is nothing in the abatement act to show any intention to
change the rule under the Code of 1871 as to the acts required

to vest title in the state.  The original list was required by the abatement act to be forwarded to the auditor for the identical purpose for which the Code of 1871 required a certified copy to be forwarded to him, that is, in order that the auditor might perform his duties under the law with regard to the lands, and not for the purpose of vesting title in the state.  The abatement act required the list to be returned to the clerk and to be recorded by him before he forwarded it to the auditor.  This was evidently required to be done in order to make a record of a completed sale to the state.

The tax-collector's deed to the Liquidating Levee Board of May 10, 1869, was void.  Said levee sale was void, because the land was then held by the state under the said sale of July 4, 1867.  *Rocks* v. *Baskett,* 68 Miss., 253, 8 South., 514.

In *Sigman* v. *Lundy, supra,* at page 530, the court says: "Whether the state's title was unimpeachable at the time of the sale to the levee board, is immaterial, since it afterwards became so prior to the enactment of the act of March 1, 1875."  (The abatement act.)  The "State's title" referred to above, was a tax collector's deed, made in 1867, and the "sale to the levee board" was a tax collector's deed made to the levee board in 1869.  In other words, the facts in *Sigman* v. *Lundy,* were, except as to the objection urged to the state sale, "on all fours" with the facts in the case at bar, and the court held that the prior sale to the state made by subsequent sale to the levee board void.

The three years actual occupation by the cross-defendants, Nolan and Lindsay, under the tax collector's deed and sales list of 1867, and May 10, 1875, made their titles unassailable.

The occupation of the cross-defendants, Alex. Lindsay and Isham Nolan commenced in December, 1898.

On January 17, 1900, the defendants, McLemore, filed an amendment to their answer to the original bill, and asked that the same might be taken as a cross-bill against the complainant, Peter Anderson.  No process was issued on this cross-bill, nor any notice thereof given until the 17 day of November, 1902.

On June 11, 1903, the cross-complainants again amended their answer and cross-bill and in that amendment prayed that the said Lindsay and Nolan be made defendants to the cross-bill. Thus we see that the actual occupation of the cross-defendants, Nolan and Lindsay, had been continued for more than four and a half years when the first attempt was made to bring them in as parties to the cross-bill. Code 1892, § 670, contains the following:

"An action shall for all purposes be considered to have been commenced, and to be pending from the time of the filing of the declaration if a summon shall be issued thereon for the defendant."

Under that section, it seems to us, that even as to Peter Anderson, the statute of limitations was not stopped from running by the mere filing of the cross-bill, when no process was issued thereon until nearly two years thereafter. But it is unnecessary to consider that question, because the land had been conveyd by Peter Anderson to Nolan and Lindsay, respectively, in December, 1898, and their occupation has been continued for more than four years when the cross-bill was amended so as to make them defendants.

The auditor's deed passed whatever title the state had under the sales of 1867 and May 10, 1875.

The cross-defendants, Peter Anderson, Alex. Lindsay and Isham Nolan, claim the land through a tax conveyance made in 1888 by the auditor of public accounts to Williams, Edwards and Goyer.

The auditor's deed to Williams, Edwards and Goyer passed to them whatever title the state had to the land without reference to the recital that the land was sold in 1879. This recital was wholly immaterial and to pass the title to the state to the land it was not necessary to introduce any evidence of a sale in 1879, or to show that the recital was a mistake. *Gamble* v. *Witly,* 55 Miss., 27; *Caruthers* v. *McLaren,* 56 Miss., 37; *Railway Co.* v. *Buford,* 73 Miss., 501, 19 South., 584.

In *Railway Company* v. *Buford, supra,* the title of the state to the land involved was acquired by a sale in 1867 to the Ten Cent Levee Board. The land was also sold to the state on March 6, 1882. On March 12, 1883, the auditor conveyed the land to Charles Scott by a deed reciting, it would seem, the sale to the state on March 6, 1882. The sale to the state on March 6, 1882, was held to be void but it was also held that the title of the state under the sale to the Ten Cent levee board in 1867 passed by the auditor's deed to Scott. The court based its decision in this case upon the broad ground that "whatever title the state had vested in Charles Scott by the auditor's deed of March 21, 1863."

In *Caruthers* v. *McLaren, supra,* the auditor's deed recited a sale to the state on May 10, 1875. The only evidence introduced to sustain this deed was a sale to the state on March 1st, 1875, for the taxes of 1874, and it does not appear from the report of the case that any evidence was introduced relating to the recited sale of May 10, 1875, yet it was held that the title of the state under the sale on March 1, 1875, passed to the auditor's grantee.

The cases of *McCulloch* v. *Stone,* 64 Miss., 378, 8 South., 236, and *Murdock* v. *Chaffee,* 67 Miss., 740, 7 South., 519, are not applicable to the present case. *Railway Co.* v. *Buford,* 73 Miss., 531, 19 South., 584.

But it is urged by the appellants that the auditor's deed is void for lack of the endorsements required by Code 1880, § 562. No objection whatever, either general or special, was made in the court below to that deed. In addition to that, it was agreed by counsel as follows: "That by conveyance bearing date April 13, 1888, the state of Mississippi by the then auditor of public accounts, executed a conveyance, purporting to convey said land to James M. Edwards, W. A. Williams and R. L. Goyer." In addition to this, the auditor's original conveyance was not introduced in evidence, but in record thereof, as shown in the record book. If the objection had been made that the auditor's

deed was invalid, because of the absence of the statutory endorsements, the proof could have been made that the original had those endorsements, and the record was wrong.

Argued orally by *T. A. McWillie,* for appellants, and by *Calvin Perkins,* for appellees.

Whitfield, C. J., delivered the opinion of the court.[*]

The case made by the record is as follows: On June 17, 1898, Peter Anderson filed his bill in the chancery court of Quitman county, showing that the land in controversy was sold to the state for taxes on July 4, 1867, and that, there having been no purchase or redemption from that sale, it was again sold for taxes on May 10, 1875, under the abatement act of 1875 (Laws 1875, p. 11, c. 2), and that by mesne conveyances he had acquired said tax titles, and praying for a confirmation of his said tax title. On January 16, 1899, the defendants McLemore filed their answers to said bill, and on the same day J. W. Robertson filed his answer, adopting the answers of the McLemores. On January 17, 1900, the defendants filed an amendment to their answer, and prayed that their answer and the amendment thereto be taken as a cross-bill, and that a decree be rendered declaring the deeds set out in complainant's bill void, and cancelling the same as a cloud on their title, and for writ of possession for the lands, and for general relief. No process was issued upon this cross-bill, nor any notice thereof given until November 17, 1902. On that day the defendants, by their attorneys, gave notice in writing to the solicitor for the complainant, that the defendants had, by their solicitors, filed a cross-bill in the cause. This notice was dated November 17, 1902, and was served on that day. On November 18, 1902, the complainant dismissed his bill without prejudice. On November 21, 1902, Peter Ander-

---

[*] This case was decided May 20, 1907, but for the reasons stated in the opinion rendered December 21, 1908, *post*, 65, its reporting was postponed.

son, the cross-defendant, filed his answer to the cross-bill. On June 11, 1903, the cross-complainants filed a paper purporting to be an amendment of and an addition to their answer and cross-bill, and praying, among other things, that Alex. Lindsay, Isham Nolan, D. F. Rogers, and D. M. Russell be made parties defendant "to this bill, and be summoned by proper process to appear and answer, plead, or demur to the same," etc. On April 19, 1904, the cause was heard by the chancery court, and a final decree was rendered by its dismissing the cross-bill.

The land in controversy was patented to the state of Mississippi under the act of Congress known as the "Swamp Land Act," approved September 28, 1850 (9 Stat. 519, ch. 84); and on November 12, 1852, John D. McLemore located on the land scrip distributed to Coahoma county, pursuant to chapter 16, p. 41, Laws of 1852, the same being an act entitled "An act to provide for the construction of a levee upon the Mississippi river, for the reclamation of the state and school lands, and for other purposes," approved March 15, 1852; and on May 30, 1853, pursuant to said location, a patent was duly issued to John D. McLemore for the same land. Upon the formation of Quitman county on February 1, 1877, the land became a part thereof. Prior to that time it was a part of Tunica county.

To maintain their suit the cross-complainants introduced in evidence a deed from Gibbs & Hemingway, liquidating levee commissioners, to S. M. and J. H. McLemore; a certified copy of a tax deed, dated May 18, 1869, executed by the sheriff of Tunica county to the liquidating levee board; a certificate by the state land commissioner, showing that the land was patented to the state under the "Swamp Land Act"; and an agreement of counsel, the fourth, fifth, sixth, seventh, tenth, eleventh, and thirteenth paragraphs of which are as follows: "(4) That the said patent issued to J. D. McLemore on November 12, 1852, was legal and valid in all respects, and passed a fee-simple title to the land in controversy, unless it be that it was illegal to locate said land with scrip distributed to the president of the board

of police of Coahoma county; the land being at that time a part of Tunica county. (5) That the cross-complainants are the children and only heirs at law of the said J. D. McLemore. (6) That by conveyance bearing date April 13, 1888, the state of Mississippi, by the then Auditor of Public Accounts, executed a conveyance purporting to convey said land to James M. Edwards, W. A. Williams, and R. L. Goyer. (7) That at and before the filing of the original bill in this cause, to wit, on the 1st day of October, 1894, Peter Anderson, the complainant in the original bill and defendant in the cross-bill, acquired by mesne conveyances such title as was vested in the said James M. Edwards, W. A. Williams, and R. L. Goyer under said conveyance dated April 13, 1888. . . . (10) That by deed bearing date December 2, 1898, Peter Anderson conveyed to Alex Lindsay the west one-half of the land in controversy, and that afterwards, to wit, on the — day of December, 1898, the said Alex Lindsay entered into the actual possession and occupation of said land under his deed, and built a residence thereon, and inclosed not less than ten acres thereof, and made a crop of cotton and corn thereon during the year 1899, and that ever since he built said residence on said west one-half of said land he has continuously resided thereon, cultivating each year never less than ten acres thereof in cotton and corn, and claiming the same as his property in fee simple, openly, notoriously, and adversely to all the world, except as to the unpaid purchase money from the said Alex Lindsay to the said Peter Anderson, as set out in said answer to said cross-bill. That at no time since he inclosed ten acres of said land in December, 1898, has the said Alex Lindsay had less than ten acres of said west half of land inclosed." The first part of paragraph 11 of said agreement is word for word the same as paragraph 10, except that the name of Isham Nolan is substituted for that of Alex Lindsay, and the east half of said land in controversy is substituted for the west half of said land, and said paragraph 11 closes with these words: "That before either

the said Alex Lindsay or the said Isham Nolan entered on said land the attorney of the complainants warned them that the complainants were in possession of the land and that they must keep off of it." Paragraph 13 reads: "That the answer of Peter Anderson, filed November 21, 1902, to the cross-bill, be taken as his answer, and also as the joint and separate answer of Isham Nolan and Alex Lindsay, J. F. Rogers, and D. M. Russell to the cross-bill filed June 11, 1903."

The cross-defendants introduced in evidence a certified copy of a deed from the tax collector to the state of Mississippi, dated July 4, 1867; a certified copy of a copy of the list of lands sold to the state of Mississippi May 10, 1875. The deed and sales list last mentioned were objected to by the cross-defendants, but the ground of the objection was not stated. A final decree was entered April 19, 1904, dismissing the cross-bill, and the cross-complainants have appealed. The appellees rely on an alleged sale made July 4, 1867, to the state, and an alleged sale on May 10, 1875, under the abatement act of 1875, under which two sales appellees claim the state had title, and that, the state so having a valid title, appellees acquired that title by a deed from the auditor of the state of date April 13, 1888.

First, as to the alleged sale to the state in 1867, that sale was made on July 4, 1867. July 4, 1867, fell on Thursday. Under the statute then in force, tax sales had to be made on the first Monday in July. Laws 1863, p. 111, ch. 7; *Hardie* v. *Chrisman*, 60 Miss., 671. There is absolutely no evidence whatever in this record to show that the sales were adjourned from day to day from July 1st, the first Monday of July, 1867, until July 4th. Nor is there any agreement in the record to that effect. That sale was, therefore, made on the wrong day, and was absolutely void. *Mead* v. *Day,* 54 Miss., 58; *McGehee* v. *Martin,* 53 Miss., 519; *Harkreader* v. *Clayton,* 56 Miss., 383, 31 Am. Rep., 369; *Meyer* v. *Peebles,* 58 Miss., 628; *Byrd* v. *McDonald* (Miss.), 28 South., 847.

But, secondly, as to this alleged sale of July 4, 1867, which

it is insisted was made valid by the act of 1860 and by Code 1871, § 1709, the only possible method of holding that sale valid, since it was made upon the wrong day, would be by invoking, as is done, the statutes of limitation involved in the act of 1860 (Laws 1859–60, p. 213, c. 154) and Code 1871, § 1709. But the appellees never acquired any title from the state, as shown, until the 13th day of April, 1888. Prior to that time, on March 2, 1888, the legislature passed the well-known act of 1888 (Laws 1888, p. 42), by section 5 of which the legislature expressly validated all sales made by the liquidating levee board, except as against certain persons who had paid all taxes and were at the passage of the act in adverse possession of the land affected by such sales. It is not pretended that the appellees belong to that class, and it is perfectly manifest that the act of 1888 not only made the deed of the commissioners, Gwin and Hemingway, *prima facie* evidence of a valid sale to the liquidating levee board, as provided in section 1 of said act; but, as stated, it also validated, except against constitutional defects, all sales made to the liquidating levee board, except as stated. Suppose it should be granted, therefore, that the state actually had title under the sale of July 4, 1867, made valid by the statute of limitations involving the act of 1860 and Code 1871, § 1709; was it not perfectly competent for the state to waive the effect of these statutes of limitation, which alone had given any validity, if it had any, to the sale of July 4, 1867, by this provision in section 5 of the act of 1888 ? Was it not perfectly competent for the state by section 5 of that act of 1888 to provide, as it did, that all deeds made to the liquidating levee board should be valid, save as against constitutional defects, except upon making the showing, provided in that section, that the taxes had been paid, etc ? Or, to put it more logically and accurately, since the state never got any title by virtue of the tax sale of July 4, 1867, that sale having been void because made on the wrong day, and in truth being fully protected from suit to recover such lands by virtue of mere statutes of limitation, the

act of 1860 and Code 1871, § 1709, could it not, by section 5 of the act of 1888, waive these mere statutes of limitation, which alone protected its void title from assault? One who claimed adversely to the state's alleged title acquired on July 4, 1867, was not confronted by any title acquired at that sale, valid in itself; for it was absolutely void, as having been made on the wrong day. He was confronted merely with his inability to sue and show such voidness of the state's alleged title by these two statutes of limitation. Can there be any doubt that the state could waive these statutes of limitation, and that it did waive them; that it did divest itself of any protection arising out of these statutes of limitation, by section 5 of the act of 1888, in the case, at least, of one who bought the state's title after the passage of said act of March 2, 1888?

We think it is clear, on the facts of this case, having regard to the date of the alleged purchase from the state, April 13, 1888, and having regard to the date of the act of March 2, 1888, that these appellees cannot invoke, for their protection, these statutes of limitation, which the state had waived before appellees acquired title by said section 5 of the act of 1888. Since, therefore, all that appellees ever had, furnishing them any semblance of title derived under the sale of July 4, 1867, was the protection of these two statutes, and since the state waived those statutes and the appellants purchased in 1878 from the commissioners the title of the liquidating levee board, which title had been acquired May 18, 1869, the tax deed showing the sale was adjourned from day to day till the 18th, and since that title of the liquidating levee board so acquired May 18, 1869, is assailed only on the ground that it was void because the state had the title at the time of the sale, it is manifest that the appellants acquired a good title by their conveyances set out in the record, and that appellees are in no position to set up the act of 1860, or Code 1871, § 1709, having bought what title they had after these statutes had been waived by the state by section 5 of said act of 1888. It is clear, therefore, first, that

the state got no title by the sale of July 4, 1867; and, second, that, if it had, it got it only by virtue of these two statutes, which it waived in favor of appellants and before appellees purchased from the auditor on April 13, 1888. It is to be especially noted that the deed of May 18, 1869, recites adjournment of the sale from day to day till 18th, unlike the deed in *Meyer* v. *Peebles,* 58 Miss., 634, and that the sale of May 18th to the levee board, being valid so far as this record shows, no sale could have been made to the state May 10, 1870. *Meyer* v. *Peebles, supra,* and *Bunch* v. *Wolverstein,* 62 Miss., 56.

But, as to the alleged sale of May 10, 1875, if the sale alleged to have occurred on May 10, 1875, is sufficiently shown by the certified copy, a copy of the list of lands sold to the state May 10, 1875, as to which we say nothing now, it does not appear that the auditor's deed was based on such sale. The auditor's deed recites a sale in 1879. There is no sales list showing that the land was struck off to the state in 1879; nor is there any proof made that the land had not become subject to taxation and sale for delinquency in 1879. There is no agreement that the recital in the auditor's deed is a mistake, nor is there a scintilla of evidence offered to show that it was a mistake. It may be true, as said by learned counsel for appellees, that the cases of *French* v. *McAndrew,* 61 Miss., 187, and *Bower* v. *Chess,* 83 Miss., 218, 35 South., 444, deal with tax collectors' deeds and not with the deed of the auditor, and that the principle of those cases may not be, in its whole extent, applicable to an auditor's deed; but that does not meet the difficulty, on this record, that there is neither an agreement, nor evidence showing, in any way, that the recital in the auditor's deed was a mistake. We must, perforce, therefore, on the face of this record, accept the statement in the auditor's deed as true that the sale was made in 1879 on which the auditor's deed was based. As there is no sales list showing that the land was struck off to the state in 1879, nor any evidence that the land had not become subject to taxation and sale for delinquency in 1879,

the auditor's deed conveyed no title derived under the only sale of which it is predicated, to-wit, a sale in 1879. It is true, also, as urged by learned counsel for appellees, that, if it has once been shown that the state actually has title under any sale for taxes, the auditor's deed will convey the same to a purchaser, although there be a misrecital therein as to the real date of the sale to the state. See *Caruthers* v. *McLaren,* 56 Miss., 378. But it never has been held by this court that, when an auditor's deed recites a sale for taxes at one time, the mere proof of an earlier sale will establish the fact that the date named in the deed is a misrecital, and the cases of *Gamble* v. *Witty,* 55 Miss., 27, and *Caruthers* v. *McLaren,* 56 Miss., 378, are not, on their facts, cases which support the contention of learned counsel for appellees that the statement made in the auditor's deed that the sale was made in 1879 is a misrecital. Not being able, therefore, on this record to treat is as a misrecital so far as the auditor's deed is concerned, its own statement is that it is predicated of a sale, to wit, a sale in 1879, when there is no evidence in the record to show any such sale ever made to the state for taxes.

But there is another fatal objection to the view of the counsel for appellees on the record as presented to us. If it were considered, about which we now express no opinion, that the absence from the auditor's office of the original sales list of lands sold under the abatement act did not invalidate that alleged sale, as showing want of power in the auditor to sell in the absence of such original sales list, it nevertheless clearly appears that the auditor's deed in this case, whether it be the original deed or a certified copy, did not contain the essential indorsements required specifically and expressly by Code 1880, § 562. The failure of such deed to show these indorsements, by the express terms of the statute, made the auditor's deed absolutely void. This error is so fundamental, resuling directly from the express and positive provision of the statute law, that we do not think the failure to object to it in the court.

below material, and the objection can be made here for the first time. The objection is not one which goes to mere 'irregularity. It is one which cuts up by the roots the foundation of appellees' title, as being made absolutely null and void by the statute law. This court has no power to render nugatory any positive declaration of the statute (Code 1880, § 562) that a deed like this shall be absolutely void. A failure to object cannot repeal the positive statute law, declaring it void. But, worse than all for appellees, since the deed of May 18, 1869, shows on this record good title in appellants, no sale could have been made to the state May 10, 1875. It results necessarily from the views which we have indicated that the decree is erroneous.

We will, however, add that we are of the opinion that the three-year limitation of Code 1880, § 539, invoked, cannot apply on the facts of this record to protect the possession of Lind-. say or Nolan, since they were purchasers *pendente lite.* The suit was begun by their grantor, Anderson, on June 17, 1898. They purchased December 2, 1898. Anderson continued to prosecute the suit long after the first cross-bill was filed, and until more than three years after their adverse possession began. The cross-bill was filed January 17, 1900. Anderson dismissed his bill November 18, 1902. As Lindsay and Nolan purchased *pendente lite,* they should be held, on true equitable principles, to have been affected by everything that appeared in, and might have been done in, the proceeding of their grantor, whose bill set up the adverse claim of the present cross-complainants, and alleged possession in their tenant. True, Nolan and Lindsay were afterwards formally brought into the case; but were they not already there in contemplation of law? The very title under which they claim is assailed in a suit brought to quiet title, which suit was pending when they bought, and such assault was begun in less than two years from that purchase. To allow Anderson to set up for his vendees the three-year limitation of the Code of 1880 under such circumstances would be in the highest degree inequitable.

The decree is reversed, and the cause remanded for a decree in accordance with this opinion.

*Reversed and remanded.*

*Subsequent proceedings.*

After the delivery of the foregoing opinion proceedings were had as stated in the following, the final opinion delivered in the case.

WHITFIELD, C. J., delivered the opinion of the court.

This case was heard and decided at a preceding term of this court. Afterwards a suggestion of error was filed in respect to that part of the opinion touching the location of the land scrip involved in the case. This suggestion of error, after due consideration, was sustained, and that part of the opinion eliminated. Later another suggestion of error, general in its nature, was filed. This suggestion of error was being considered when it was ascertained that the original judgment in the case had been rendered in this court when one of the parties was dead, which fact, it seems, came to the knowledge of counsel on both sides after the rendition of the judgment. Thereupon the former original judgment of the court was vacated, and the cause remanded to the docket for consideration anew.

The court, as at present constituted, have given the most careful consideration to all the briefs in the cause, including the suggestion of error and the reply, and we are of the opinion that the original judgment entered in this case (43 South., 878) is manifesttly correct on this record.