CARTER *v.* STATE.

(In Banc. March 12, 1945.)

[21 So. (2d) 404. No. 35773.]

Jackson, Young & Phillips, of Jackson, for appellant.

Greek L. Rice, Attorney General, by R. O. Arrington, Assistant Attorney General, for appellee.

Argued orally by **Forrest B. Jackson,** for appellant, and by **R. O. Arrington,** for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The appellant was convicted of murder and given the death sentence. Two members of the Bar, by appointment, defended him in the court below; but other counsel have presented his appeal to this Court. The only question presented here is the failure of the court·below to inquire into whether the appellant's mental condition was such as to warrant his being then tried for the commission of the offense with which he was charged. This question was not raised at the trial, and is presented in this Court for the first time.

The rule that questions not raised in the trial court cannot be raised for the first time on appeal, is not without exceptions, among which are errors "affecting fundamental rights of the parties . . . or affecting public policy," 4 C. J. S., Appeal and Error, Sec. 242, if to act on which will work no injustice to any party to the appeal. Burke v. Shaw, 59 Miss. 443, 42 Am. Rep. 370; Gabbert v. Wallace, 66 Miss. 618, 5 So. 394; Wilson v. Alabama G. S. R. Co., 77 Miss. 714, 28 So. 567, 52 L. R. A. 357, 78 Am. St. Rep. 543; McLemore v. Anderson, 92 Miss. 42, 43 So. 878, 47 So. 801; State v. Woodruff, 170 Miss. 744, 150 So. 760.

One of the most fundamental and humane requirements of the common law, enshrined in the due process of law provision of our Constitution, is that no one shall be tried for the commission of a crime when he is mentally incapable of making a rational defense, i. e., incapable of remembering and intelligently stating the facts on which his defense rests. This mental condition may be casual, temporary or permanent, and may result from any cause. When it is made to appear in the trial court that the mentality of a defendant in a criminal case is probably of this character, his trial should not be proceeded with until that question has been investigated, and it has been made to appear that he is sufficiently rational for the purposes of his defense. That this be done is not only a fundamental right of the defendant, but is also required by the state's public policy, as expressed in Sec. 14 of its Constitution, which prohibits the depriving of any person "of life, liberty, or property except by due process of law." The evidence discloses, without conflict, that the defendant was an epileptic; and that a short time before the commission of the homicide with which he is charged he was confined in the State Insane Hospital, which he left without permission. He was seriously wounded by the person who was killed, but recovered. He was arrested immediately after the homicide, carried to a hospital, and

from there to the Hinds County jail in Jackson, and was there detained until brought to Newton for trial. He had been drafted and inducted into the army, and remained there a short time; and was honorably discharged therefrom, but for what reason does not appear.

During the trial the appellant appeared to be sleepy or drowsy; and in the testimony of the sheriff, who was introduced by the State, the following appears:

"Q. You see him now. I don't know why he does it, whether he is just posing. Is that his usual demeanor? A. No, sir, the doctor says those tablets taken in excess will produce a condition similar to drunkenness and he told us that they had been giving him too many over there in Jackson and instructed us to cut them down to three a day, and he says it produces this sleepiness or drowsiness.

"Q. Have you given him any today? A. I gave him one this morning.

"Q. Is that the way he acts when you give them to him? A. Well that is the condition he was when I brought him over here and they told us at that time what was the matter, that he thought he had taken too many of those pills.

"Q. How many were they giving him? A. Well they didn't say, but they said cut them down to three a day.

"Q. You gave him one today? A. He had one this morning.

"Q. What time? A. Around eight o'clock.

"Q. It is now about eleven? A. Yes, sir."

"That is all."

The appellant was the only witness in his own behalf, and from his testimony it clearly appears that he was then mentally incapable of remembering and intelligently stating the facts on which his defense rested. It is not clear from the evidence for the state, or at least the jury could have so found, as to who was the aggressor in the difficulty which resulted in this homicide. The appellant and the deceased both fired with pistols almost at the same time;

which fired first, and for what reason, does not clearly appear; or, at least, the jury could have so found. This being true, it was of the utmost importance to the appellant that his mind should not be so clouded by disease or the drug administered to him by the sheriff, as not to permit him to remember and intelligently state what occurred at the homicide.

It remains only to say that this is a direct appeal from a judgment of conviction, and not from a proceeding begun to set aside a conviction after it had become final, as were the appeals in the cases relied on by the appellee. Consequently they are not controlling here.

Reversed and remanded.