NICHOLAS V. BODDIE *v.* E. H. PARDEE ET AL.

1. EVIDENCE. *Land patents. Book of entries of issuance. Copies therefrom primary evidence. Code 1892, § 1784.*

   Under § 1784, code 1892, certified copies from the book of entries in the office of the land commissioner of the state, showing the issuance of patents, are primary evidence, and admissible in the same manner and with the same effect as the original patent.

2. TAX TITLES. *Redemption. Limitation of act of 1888. Laws, p. 40.*

   The act of March 2, 1888, entitled "An act to quiet and settle the title to certain lands in the Yazoo delta," etc. (Laws, p. 40), relates entirely to title, and the right of the owner of lands sold for taxes to redeem the same within one year after attaining his majority, is not affected by the provision of said act barring all proceedings for the recovery of any of said lands against one who has occupied the same for twelve months after the passage of said act, under a deed from the commissioners in *Green* v. *Gibbs*, or the auditor's deed designated in said act.

FROM the chancery court of the first district of Coahoma county.

HON. W. R. TRIGG, Chancellor.

Nicholas V. Boddie brought this proceeding in the chancery court of Coahoma county, seeking the cancellation of certain

conveyances under which the defendants claimed title, as clouds on his title, and for leave to redeem the land from certain tax sales upon which defendants' claim of title was founded. There was also a prayer for general relief. The lands sought to be redeemed were acquired by Boddie in 1873, during his minority, by deed of gift from his grandfather, Malcolm Mc-Neil. His bill was filed within one year after he came of age. He offered therein to pay to the various defendants all such sums as might be necessary to redeem the lands, when ascertained; and assailed the following tax sales as clouds upon his title: 1. A sale to the levee board for district No. 1, in January, 1874, for levee taxes due that board. 2. A sale to the liquidating levee board in May, 1874, for taxes due under the act of 1867. 3. A sale to the state for state and county taxes in June, 1874. 4. A sale to the state for state and county taxes in March, 1875. 5. A sale under the "abatement act," in May, 1875. The opinion contains such other facts as are necessary to an understanding of the case. From a decree for the defendants complainant appealed.

*Nugent & McWillie*, for appellant.

1. Before considering the soundness of the chancellor's view of the effect of the act of 1888, which seems to have greatly obscured the question arising upon the objections to the copies from the tract books, and caused a confessedly meritorious application to remand the cause to rules to be denied, the admissibility and competency of these copies become proper subjects of inquiry. Why were they insufficient to show title? Section 1784 of the code of 1892 is as follows: "Copies from the books of entries of land kept in any land office in the state, or in the office of the secretary of state, or land commissioner, or other public office, when certified by the officer having charge thereof, shall be admissible in evidence in the same manner and with the same effect as the original certificate of entry." See, also, § 1782. If this does not include the evidence remaining

on the tract book in the state land office of the issuance of pat-
ents, we greatly misinterpret its scope and meaning. Undoubt-
edly, as appellees urge, a patent is the evidence of title issued
out of the state land office, but unless certified copies of the
tract book are to have the same effect as those original muni-
ments of title would have, there is nothing for the statute to
act upon where it refers to certified copies from the book of
entries in the office of the land commissioner. That officer does
not, and so far as we can discover, never did, issue certificates
of entry, or anything but patents as evidence of a divestiture
of title out of the state. It would greatly impair the efficacy
of the statute to give it so narrow an interpretation as to ex-
clude entries in the state land office relating to the issuance of
patents, which are the instruments whereby the state's title is
divested, and limit it to entries in the United States land office,
by which alone certificates of entry are issued. *Qui hæret in
litera hæret in cortice.* When the intent of the statute is appa-
rent, general words may be restrained and those of narrower
import expanded to embrace it, to effectuate that intent. South
on Stat. Con., § 218, and cases cited. But if these copies were
not admissible, complainant, who relied on them as being ad-
missible, should have been allowed time to produce the patents.

2. What effect did the act of 1888 have on complainant's
right to redeem? It is contended that the act in question oper-
ated as an absolute bar of the right of redemption, notwith-
standing the minority of complainant, and the further fact that
the law under which the land was sold secured to him that
right.

All the laws under which the lands were sold from time to
time preserved to infants the right of redemption for a period
after attaining majority longer than the one that elapsed prior
to the institution of this suit. The sale to the No. 1 levee
board in January, 1874, was governed by the act of 1871,
which allowed two years after majority (Acts of 1871, p. 48).
The sale to the liquidating levee board was governed by the act

of 1867, which allowed the same time (Acts 1867, p. 245; Acts 1858, p. 37). The code of 1871 allowed one year (§ 1701).

Appellees rely on section 13 of the act of 1876 as a bar to appellant's proceeding to redeem, but that particular statutory provision has, in a case in all respects similar to the one at bar, been condemned by this court in no uncertain language. *Dingey* v. *Paxton*, 60 Miss., 1038.

Appellees suggest in their brief that the amendment to the act of 1867 passed in 1873 is silent as to the right of redemption. The right of redemption is there referred to as an existing right, but were this amendatory act wholly confined to other matters and entirely silent as to the right of redemption conferred by the act it amended, the provisions of the original act in that regard would remain unaffected. Acts of 1873, pp. 150 to 155.

We come now to the act of 1888. That act has never been construed as cutting off an infant's right of redemption under the law in force at the time of the sale. Indeed, the subject of redemption is not within its purview. In the case of *Moody* v. *Hoskins*, 64 Miss., 468, this court denounced as unconstitutional the act of 1876, which repealed § 1701, code of 1871, giving to infants the right of redemption within one year after coming of age, and made all lands held by the state subject to sale absolutely and without reference to such right. This case and that of *Dingey* v. *Paxton*, *supra*, contain the strongest expression against what is termed the effort to "transfer valuable rights from one to another by the easy process of legislative declaration," and we cite them, relying on the reasoning there employed by the court. If it be argued that, in *Moody* v. *Hoskins*, the right of redemption was cut off *eo instanti* by the passage of the statute, without leaving any reasonable time for redemption, and the question there determined is therefore different from that arising on the one year limitation coupled with actual occupancy of the act of 1888, construed in *Cameron* v. *Railway Co.*, 69 Miss., 78, then we have to say that, in the

case last cited; no question of the right of infants to redeem was involved.

Appellees rely on the well-settled rule that no exception in favor of infants and married women will be implied, but must rest upon some express statutory saying. If the original acts under which these lands were sold had contained no exception in favor of infants, we would not pretend that any existed, but when the right has been once given by express statutory provision, we do not think any implication of its repeal arises, or that, under the policy of the law favoring a right of redemption, the act of 1888, which does not expressly mention infants, like that of 1876, or even refer to the subject of redemption, should be applied in bar of their rights.

*George Winston*, on the same side.

*Mayes & Harris*, for appellees.

If the court erred in excluding the evidence, the action was harmless to complainant, since the court expressly placed its final decision on the strength of defendant's tax titles. The title of 1874 to the No. 1 levee district was a good title to all the lands. It was conveyed by the thirteenth section of the act of 1876 to the state, and was thence conveyed, by the auditor's deeds of 1888, to defendants. *Shotwell* v. *Railway Co.*, 69 Miss., 541.

If none of the other titles are good, there is still a third independent title, which applied to all the lands in controversy, and that is the title acquired by sale under the abatement act of 1875. The title so acquired by the state was derived by the defendants through the auditor's deeds of 1888. The deeds of 1888 are *prima facie* evidence of the making of a valid sale, and that the lands were such lands as were subject to be sold under the abatement act. *Patterson* v. *Durfey*, 68 Miss., 779; *National Bank of the Republic* v. *Railway Co.*, 72 Miss., 447.

*D. A. Scott*, on the same side.

We rely upon the provisions of an act of the legislature, approved April 10, 1873 (Laws, p. 150); also, § 1709 of the code of 1871. In neither of these statutes is there any saving clause allowing minors to enforce their remedies after they attain their majority. Infancy is an almost universal statutory exception to statutes of limitations, but is an exception which cannot be implied. 13 Am. & Eng. Enc. L., p. 740; *Ib.*, p. 735. I insist that the act of 1888 controls this case, and is conclusive of it. In *Cameron* v. *Railway Co.*, 69 Miss., 78, Chief Justice Campbell, in commenting upon section four of said act, held that the limitation therein provided was not unreasonable, and was constitutional, and not subject to adverse criticism. The only proof of the question as to occupation of the land by the appellees, was the deposition of D. G. Pepper, and he states that these appellees had been in actual possession of the lands for more than four years prior to the bringing of this suit, and continuously thereafter. Where more than three years has elapsed after the sale, no suit can be maintained to invalidate the title thereby obtained. *Cole* v. *Coon*, 70 Miss., 634; *Nevin* v. *Baily*, 67 Miss., 433; *Gibson* v. *Berry*, 66 Miss., 515; *Sigman* v. *Lundy*, 66 Miss., 522. The fact that some of the statutes referred to have been repealed after the lands had been sold for taxes cannot affect the rights of appellees. *Jonas* v. *Flannagan*, 69 Miss., 577; *Gibson* v. *Berry*, 66 Miss., 515.

*J. W. & W. D. Cutrer*, on same side.

The presumptions arising upon the execution of the auditor's deed under the act of 1888, have not been overthrown by the evidence. It was confessed that all the taxes from 1868 to 1874 for state and levee and county purposes had not been paid. Therefore, the sale under the act of 1888, the sale stated and relied on, prevails in the absence of proof to overcome affirmatively the presumption of duly adjudged delinquency

and of prior valid sales. *National Bank of the Republic* v. *Railway Co.*, 72 Miss., 447.

The sales to the district No. 1 levee board and the liquidating levee board were set forth in the discovery made by appellees, in answer to the demand of appellant's bill, and the correctness of these sales have not been overcome. Again, the act of 1888 presumes such sales to have been properly made, and the presumption has not been rebutted. So that, under the sales to the state and the levee boards, all vested in appellees by various purchases, fortified by the deeds under the act of 1888, the appellees are secure in a perfect title. But it is contended that, notwithstanding this title, appellant still has the right to redeem. It is doubtful if the purpose of the act of 1875, called the abatement act, made any special extension of the right to redeem in favor of minors. In its very terms the act excludes the idea that the right to redeem was reserved to minors until after one year from their attaining their majority.

The lands were sold for taxes in 1874 and 1875, and the law did not allow to minors any period for redemption beyond that provided for and accorded to adults whose lands were sold at the same time. If this be not true, the legislature, in 1876, removed the existence of infancy as a ground for further time to redeem, and accorded infants, after that date, more time to redeem than had been allowed by the laws in force at the time of the sale from which complainant seeks to redeem. The act of 1888 cuts off suits seeking to attack the validity of such sales, except upon evidence of the payment of taxes, and this right also was denied upon twelve months' occupation after the passage of the act. Such legislation is constitutional. *McLemore* v. *Scales*, 68 Miss., 47; *Patterson* v. *Durfey*, 68 *Ib.*, 779; *Cameron* v. *Railway Co.*, 69 Miss., 78.

Argued orally by *T. A. McWillie*, for the appellant, and by *Edward Mayes*, for the appellees.

COOPER, C. J., delivered the opinion of the court.

Without undertaking to dispose of all the numerous questions in this case, we deal with such as are necessary in its present attitude. The bill has the double aspect of seeking to vacate the several tax titles, and, failing in this, to secure to the complainant the right to redeem the lands from the tax sale, on the ground that he was an infant when the sales were made, and his bill was exhibited within one year after attaining his majority. To maintain his title the complainant offered in evidence a duly certified copy of the entry from "Tract book No. 1 of original entries of swamp lands granted by act of the congress of the United States to the state of Mississippi, September 28, 1850," showing that part of the lands were purchased and paid for by, and patented to, Malcom McNeill, under whom complainant claims, April 30, 1853; and as to another portion of the lands in controversy, the complainant offered in evidence a duly certified copy from the "Tract book of original entries," in the United States land office in the Grenada district of Mississippi, now in the United States land office at Jackson, Miss., showing the entry of said land by those under whom complainant claims title. These muniments of title were excluded by the court, "on the ground that the original patents from the state of Mississippi and the United States to said land should be produced, or their absence accounted for." Upon this ruling by the court, the complainant asked that the case be remanded, so as to enable him to produce the required evidence of title, but the court denied the request, being of "opinion that the complainant is cut off from all right to redeem said land by the act of March 2, 1888, and the bill must be dismissed, although the complainant should show a perfect title but for the tax titles under which the defendants hold." It thus appears that the chancellor denied all relief to the complainant in any aspect of the case.

It was error to exclude the certified copies from the office of the state land commissioner and the United States land office. This

was not secondary evidence requiring a foundation to be laid for its introduction. It is original evidence, and admissible without any foundation laid. Sec. 1784 of the code makes "copies from the books of entries of land kept in any land office in the state, or in the office of the secretary of state or land commissioner, or other public office, when certified by the officer having charge thereof, admissible in evidence in the same manner and with the same effect as the original certificate of entry," and §§ 1782 and 1783 of the code relate to certificates issued by officers of the United States in pursuance of any act of congress, and make copies of such evidence, and provide that such certificate shall vest the full legal title, etc. The holder of a patent for land may, if he chooses, rely on the certificate of entry or a copy from the books of entry. The obvious purpose of § 1784 is to make copies of the books of entry of land kept in any public office in this state admissible in evidence to prove what they show. The last clause of the section—"in the same manner and with the same effect as the original certificate of entry"—relates to the usual designation of the purchase of land from the state or the United States as an "entry" of the land, and it is observable that the act of March 15, 1852, ch. 16 of the session acts of that year, under which the land in dispute here was disposed of by the State of Mississippi, in sections 17 and 18, speaks of the location of the warrants and the patenting of the land as an "entry" of it. It is true that the secretary of state was to issue a patent, but this was intended as the instrument of evidence in the hands of the owner, and there can be no question of his right to show his entry of the land, whereby he acquired the right to it, and to a patent as evidence of that right, but not the only evidence. The location of the warrants or scrip, and the entries of it on the books by the state officer, gave the party a right to the land and to a patent as conclusive evidence of it, but, as already said, a party is not confined to the patent as the exclusive evidence of the title. So far from the entries on the books in the office from which a

patent issues being secondary as to a patent, they are primary. They precede it, and it is but evidence of the concurrence of those things which are prerequisites to its issuance.

The opinion of the chancellor to the effect that the complainant was " cut off " from the right to redeem, by "An act to quiet and settle the title to certain lands in the Yazoo delta," etc., approved March 2, 1888 (Acts 1888, p. 40), is erroneous. That act in no manner affects the right of redemption. Its language does not embrace any such right, and it had no such purpose. It relates entirely to title, and in no way affects any right consistent with title. A lien of any kind, a right to redeem, or a claim of any sort not controverting the title but asserted notwithstanding the title intended to be settled and quieted by the act, and in recognition of it, is beyond the scope of the act, and wholly unaffected by it. The right of the infant to redeem is clear, so far as relates to the act referred to.

We decline now to consider seriatim the several rulings of the chancellor upon the exceptions of the complainant to evidence of defendants, and leave those questions open for the consideration of the court below in the further progress of this cause.

*Decree reversed and cause remanded.*