## BURROUGHS LAND CO. *v.* MURPHY.

[95 South. 515. No. 22837.]

1. LEVEES AND FLOOD CONTROL. *Title to lands acquired by liquidating levee board by tax sale divested out of board and vested in state.*

   By a tax sale made May 12, 1870, the liguidating levee board acquired title to the land in controversy, and under the act of the legislature of April 11, 1876 (Laws 1876, chapter 105), this title was divested out of the board and vested in the state.

2. TAXATION. *Auditors deed not containing indorsements as to amount of state and county taxes and damages and of fee and commissions void.*

   An auditor's deed which was executed under the provisions of section 562 of the Code of 1880, and which does not contain the indorsements expressly required by that statute, is void.

3. EQUITY. *Same strictness in framing pleas of abatement required in chancery as at common law; plea in abatement in chancery must be sworn to.*

   The same strictness in framing pleas in abatement is required in chancery, as at common law, and a plea in abatement in chancery must be sworn to.

4. APPEAL AND ERROR. *Objections made for first time on appeal not considered, if such as could have been waived by agreement either express or implied.*

Where it can be done, this court will confine its action to a review of the case as it was tried below, and will not consider objections made for the first time here, if they are such as could have been waived by agreement of the parties, either express or implied, from the conduct of the trial in the court below.

5. COVENANTS.   *Measures of damage of vendee in possession and one not in possession for breach of warranty stated.*

Where a vendee of land is in possession under the title conveyed by the vendor, and the relation of vendor and vendee still exists, the measure of damage for a breach of the warranty is the amount which the vendee has been or will be forced to expend to protect his possession and perfect his title, not in excess of the amount of the purchase price and interest, but where the vendee is not in possession under the vendor's warranty of title and the relation of vendor and vendee has been severed, the vendee is under no duty to diminish the damage that would accrue from a breach of the warranty by purchasing the outstanding title, and he may recover the sum paid to the vendor for a void title.

APPEAL from chancery court of Sunflower county.

Hon. E. N. Thomas, Chancellor.

Suit by Solomon L. Murphy against the Burroughs Land Company. From a decree for plaintiff, defendant appeals. Affirmed.

*R. B. Campbell,* for appellant.

(1) The title, as deraigned by appellee, both in his original bill, and in his supplemental bill, was acquired, in 1870, by what is known as the liquidating levee board, by virtue of a sale to that board for taxes; and there is no competent showing how the title passed from that board to the state of Mississippi. It is true that the bills alleged that the title passed from that board to the state by operation of law; and it is also true that appellant, in its answer, admitted that allegation; but that was simply a legal deduction—a misconception of the law—and not a statement of fact. *Gibbs* v. *Green,* 54 Miss. 592; *Bunch* v. *Wolerstein,* 62 Miss. 56; *Woodruff* v. *State,* 77 Miss. 68.

Since, therefore, appellee based his claim upon a title acquired from the state, and failed to show title in the state, his suit should have been dismissed.

(2) The title being in the liquidating levee board, there was no breach of appellant's warranty of the title, as there was no eviction of appellee from the land, or yielding of his possession thereof to a superior title. *Dyer* v. *Britton,* 53 Miss. 270; *Green* v. *Irving,* 54 Miss. 450.

His possession of the land, acquired from appellant, had never been disturbed, but he continued in possession until the final hearing of the cause, and, presumably, he is still in possession thereof. If he had paid the taxes or redeemed the tax title from the Smith heirs, in the event he had not assumed the obligation of paying the taxes, he could have sued at once for reimbursement; but, he did not pay the taxes nor redeem the land from the tax sale. In the deed of trust, which he gave to appellant to secure the unpaid purchase price of the land, he assumed to pay all taxes thereon (see record page 63) and a sale of the land for taxes was the result of his own failure, or neglect, to pay the taxes. *Swinney* v. *Cockrell,* 86 Miss. 318. Furthermore, as against appellant, the suit was premature, inasmuch as it sought relief on the warranty, only in the event that the court should decree the tax title of the Smith heirs to be valid. At the time, there had been no breach of the warranty, and a cause of action thereon had not arisen, but was only contemplated. Such a suit cannot be maintained. *Brooks* v. *Martin,* 62 Miss. 217.

(3) Admitting however, for the sake of argument, that the title had passed from the liquidating levee board to the state, and that the title from the state to N. T. Burroughs, in 1885, which was the title conveyed by appellant to appellee, was void, and that the title in consequence thereof, was in the state, at the time appellant conveyed and warranted the title to appellee, the warranty was breached, at the time it was made, which was November 26, 1913; and, as the suit was not brought until January

26, 1920, it was barred by the six-year Statute of Limitations; and, for that reason, the court erred in granting any relief to appellee, for a breach of the warranty. *Green* v. *Irving,* 54 Miss. 450; *Perry* v. *Jones,* 71 Miss. 647.

(4) The supplemental bill was based upon an entirely new title, the title acquired from the state by appellee December 18, 1920, which was nearly a year after the original bill was filed. The title, on which the original bill was based, was decreed to be void; and the court granted relief exclusively upon the case as made by the supplemental bill, which was error. Appellee could not support a bad title by acquiring another after the filing of his original bill, and bringing it forward by a supplemental bill. Daniel's Chancery Pleading & Practice (4 Ed.), 1551 & Note; *Straughan* v. *Hallwood,* 8 Am. St. R. 29; *Wright* v. *Frank,* 61 Miss. 32. Furthermore, as already stated, the title, even as shown by supplemental bill, was in the liquidating levee board, and it was not shown how the state of Mississippi acquired title; and, consequently, the conveyance from the state to appellee, December 18, 1920, did not entitle appellee to any relief.

(5) Appellee lost his title by a foreclosure of the deed of trust, which he had given to secure the unpaid portion of the purchase price, on the 27th day of November, 1920, and, at the foreclosure sale, the land was conveyed to one N. A. Phipps which was nearly a year after filing his original bill; and, inasmuch as the title, upon which the original bill is based, was held to be void, and he did not acquire his new title from the state until December 18, 1920, he was out of court; and even if he were not estopped from acquiring the new title, and setting it up against appellant, while in possession of the land under appellant, I respectfully submit that he was not entitled to relief in that suit; but should have filed an original bill based upon said new title. Having failed to do so, the court erred in allowing him relief in this suit.

(6) Finally, if the foregoing reasons given for a reversal of the court's decree be unsound, then I insist that the decree rendered against the appellant is excessive. Being in the undisturbed possession of the land under appellant's warranty of the title, and having protected his title and possession by acquiring from the state her title, on December 18, 1920, and having paid therefor only fifty dollars, the measure of his relief should have been for that amount, instead of decreeing his right to recover three hundred twelve dollars and fifty cents which he had paid appellant for the land. That is too clear to admit of doubt. *Kirkpatrick* v. *Miller,* 50 Miss. 521; *Allen* v. *Miller,* 99 Miss. 75; *Wade* v. *Barlow,* 99 Miss. 33; *Coopwood* v. *McCandless,* 99 Miss. 364.

*Moody & Williams,* for appellee.

The only question presented by this appeal, is the liability of the appellant on its warranty, contained in the deed executed to the appellee. However, as to that, other questions are presented in the brief filed in behalf of the appellant, which it may be well for us to answer, and we shall do so, using the several headings, for each question, as they appear in that brief.

I. (1) We admit, of course, that in suits: "To cancel a cloud on title, the complainant must show perfect legal or equitable title in himself, regardless of defects in the defendant's title." However, we do not see that the appellants, disclaiming any title to said land, and only claiming that it is not liable on its warranty, has any right to present that question on this appeal. Its title was not adjudicated for it disclaimed any, and the Smith heirs, whose title was adjudicated and which was canceled, have not prosecuted an appeal.

The record clearly discloses a sale to the liquidating levee board on May 12, 1870, and no subsequent disposition of that title, either by the levee board or the state, until the patent was executed by the state to the appellee, on De-

cember 18, 1920. That such title, on those facts, did become vested in the state of Mississippi, is evident by referring to the several acts of the legislature, to which your attention shall be directed and several decisions construing those acts.

We do not claim that the legislature had the power to vest the title, acquired by the liquidating levee board at this tax sale, in the state and divest the right of the holders of bonds issued by the levee board, as held in *Gibbs* v. *Green,* 54 Miss. 592; *Burch* v. *Wolerstein,* 62 Miss. 56, and, *Woodruff* v. *State,* 77 Miss. 68, cited in appellant's brief.

Subject to the rights of the bondholders, and limited solely to the rights of the bondholders, we contend that the legislature not only had the right to, but did, vest the title to the land sold to the liquidating levee board, in the state; and, the title being vested in the state, the state had the power to dispose of such title in such manner as the legislature might direct, and no one other than the bondholders, if there are any, have a right to complain.

These several acts have been several times construed by this court. Your attention is specially directed to *Shotwell* v. *Railway Co.,* 69 Miss. 541-557, in which this court, after considering the several acts referred to, expressly held: "from all this, it is apparent that the provision for vesting the lands purchased for taxes in the board was simply a means to secure the 'charges and assessments' imposed by the eighth section of the act, which constituted a 'trust fund' for creditors. That could not be impaired; but it was competent for the state to change the officials to administer the trust, and to divest the title of the lands to the levee board and vest it in itself, in the way in which it was done by the thirteenth section of the act of April 11, 1876, cited above."

True it is that this court, in that case, was dealing with the title acquired by levee board No. 1, but what is said as to the title acquired by levee board No. 1 applies with equal force to the title acquired by the liquidating

levee board, for all three boards, and the title acquired by all three boards was expressly legislated upon in that chapter. *Railway Co.* v. *Buford,* 73 Miss. 494-501; *Shotwell* v. *Railroad Co.,* 69 Miss. 541.

We submit that the three cases cited in appellant's brief have no bearing whatever upon the power of the legislature to vest the title to these lands in the state. No one can object except the bondholders of one or more of said levee boards. Having shown that the title vested in the liquidating levee board, by the sale of May 10, 1870, subsequently became vested in the state of Mississippi by the Act of 1876, and the other acts cited, the next questions presented are: 1. Did N. T. Burroughs acquire that title by the alleged deed from S. Gwin, Auditor, to him dated July 31, 1885? (R. P. 52-3). This deed, when introduced, was objected to. 2. If not, did the appellee acquire the state's title by virtue of the patent executed December 18, 1920? We do not understand the attorney for the appellant to contend that the deed from S. Gwin, Auditor, to N. T. Burroughs, just mentioned, conveyed the state's title to him.

However, if such contention had been made it could not be sustained for two reasons: a. Because it does not appear that the provisions of sections 561 and 562 of the Code of 1880 were complied with; and b. Because it does not appear that said land had ever been sold to the state of Mississippi for taxes.

You will note that the record of said alleged deed does not show that the following provisions of section 562 of the Code of 1880 was complied with: "The auditor shall make a statement on each conveyance so made by him, of the amount of state taxes, and damages thereon, and shall present such conveyances thus prepared, to the state treasurer, who shall enter in a well-bound book, to be kept as a record of his office, a description in the conveyance of the land conveyed, and the name of the grantee, . . . and said treasurer shall mark such conveyance

"registered," and subscribe such marking with his treasurer's signature and seal, and return such conveyance to the auditor, and such conveyance shall not be valid unless it has been dealt with as herein required.   In this connection see: *Paxton* v. *Valley Land Co.*, 68 Miss. 739; *McLemore* v. *Anderson*, 43 So. 878.

You will note, by reference to the case last cited, that the objection to the deed, which the record shows was made in the instant case in the lower court, was not made in that case, but this court held that such an objection was so fundamental that it did not think that the failure to object to it in the lower court was material, and that such objection could be made for the first time in this court.

Furthermore, you will note that before a deed could be executed under sections 561 and 562 of the Code of 1880 it should appear that there was a precedent sale to the state, not a sale to one of the levee boards.   This precedent sale to the state must be shown, and not simply recited in the deed itself.   In the instant case the deed recites a sale to the state on May 10, 1875, but no evidence of any such sale was introduced.   See *Railway Co.* v. *Buford*, 73 Miss. 494.

As to the second question, that is to say, whether the appellee acquired the state's title by the patent executed on December 18, 1920.   As to this your attention is directed to Sections 5234, 5247, 5254, 5267, Hemingway's Code.   By reference to these sections you will see that it is perfectly clear that the land commissioner had the power to convey the state's title, and did so, by virtue of the patent so executed.

II (2).  The next contention is, "The title being in liquidating levee board, there was no breach of appellant's warranty of the title, as there was no eviction of appellee from the land or yielding of his possession thereof to a superior title.   At the time this suit was filed, from what is stated above, it is perfectly evident that the title to said land was in the state of Mississippi.   That being true, we

contend that the cases cited in appellant's brief, have no application. If the title to this land was in the state, and it was, the appellee, under his deed from the appellant, would not "take possession without becoming a wrong-doer, and liable to summary ejection."

We contend, as is expressly held by this court: "That a covenant of warranty, in a conveyance of land belonging to the United States (or the State of Mississippi) must be viewed differently from one where the ownership is a private person; that the grantee is not required to take possession, or attempt to get it, and that a right of action immediately accrues to recover for a breach of warranty, not dependent on any future event, but fixed by the fact of ownership of land in the Government." *Pevey* v. *Jones,* 71 Miss. 647.

As stated by this court, in the case cited, "The question involved here is not the same presented in *Green* v. *Irving,* 54 Miss. 450," etc., Ib. 649. While it is true, as held in *Swinney* v. *Cockrell,* 86 Miss. 318, cited in appellant's brief, the appellee might have paid the taxes or redeemed the land from the tax sale, and recovered the amount so paid. This, however, was a mere privilege accorded to him, and not a duty imposed by law. *Sisters of Perpetual Adoration* v. *Jane,* 110 Miss. 612-618.

In this connection we wish to make it clear that, so far as the record discloses, the appellee, as well as the appellant, had no actual notice that the taxes for which the land was sold had not been paid, nor was the appellee ever advised of such tax sale, until long after the time for redemption had expired. Therefore, under the circumstances, we submit that the appellant was liable on its warranty, not for the amount of taxes, but for the amount paid in order to get rid of this tax sale.

Certainly the appellant conveyed no title whatever to the appellee, and the appellee was forced to pay out over double the amount paid the appellant in order to perfect his title to the land. Then why, we submit, should the ap-

pellant complain because it has had to refund the money paid out, without interest?

However, it is contended that "The suit was premature, inasmuch as it sought relief on the warranty, only in the event that the court should decree the tax title of the Smith heirs to be valid." As the title was in the state, at the time the deed was executed, the warranty was then breached, as we have heretofore pointed out. Therefore, the suit, as to the breach of warranty is not premature. If, however, it was premature, we contend that that fact cannot be availed of by the appellant on this appeal. And this question we shall discuss under paragraph IV.

III (3). It is next contended that: "the supplemental bill was based upon an entirely new title—the title acquired from the state by appellee December 18, 1920—which was nearly a year after the original bill was filed." This contention we shall likewise consider in connection with the other contention that: "The suit was premature inasmuch as it sought relief on the warranty, only in the event that the court should decree the tax title of the Smith heirs to be valid.

These points are raised in this court for the first time. If you will examine the answer to the original bill you will see that no objection whatever was raised; that the suit was prematurely brought on this, see *Goff* v. *Averet,* 93 So. 2. *Beck* v. *Beck,* 36 Miss. 72-4. If, however, you will read the original pleadings, as well as supplemental pleadings, you will observe that the evident intent of the attorneys for all parties was to settle their rights in one suit. It is no doubt true that the present attorney for the appellant "had no connection with this case in the court below, and none until the appeal was taken." Probably if he had, this case would not have been so settled and the rights of all parties interested determined in one suit. Certainly it will be conceded that the appellant could, had it desired to do so, have agreed, notwithstanding the suit was prematurely brought, and notwithstanding the sup-

plemental bill was based upon an entirely new title—that its rights should be litigated and determined in this suit.

That being true, then we submit that "This court in every instance where it can possibly do so, confines its action to a review of the case as it was tried below, and should never tolerate objections made here for the first time, if they were such as could have been waived by the agreement of the parties either express or implied from their conduct on the trial before the jury, or otherwise." *Binns* v. *Stokes,* 27 Miss. 239-42. The same principle, we submit, applies as well to a trial in equity as it does at law.

In addition we direct attention to *Black* v. *Washington,* 65 Miss. 60-3. Therefore, we submit that the decree appealed from should be affirmed.

COOK, J., delivered the opinion of the court.

The appellee, Solomon Murphy, filed a bill of complaint in the chancery court of Sunflower county against the Burroughs Land Company, a foreign corporation, and the heirs of R. O. Smith, deceased, seeking to cancel an alleged tax title of the Smith heirs to certain land in controversy; and, in the event of failure so to do, to recover on the warranty of the Burroughs Land Company, appellee's immediate vendor. In the original bill, appellee deraigned his title substantially as follows: A patent from the United States to the state of Mississippi; a patent from the state of Mississippi to Henry and Lawson; a tax sale to the liquidating levee board, dated May 12, 1870; a deed from the state of Mississippi to N. T. Burroughs, dated July 31, 1885, and mesne conveyances from N. T. Burroughs to the Burroughs Land Company and a warranty deed from the Burroughs·Land Company to the complainant, dated November 26, 1913. Concurrently with the execution of this deed, the appellee executed a deed of trust on said land, to secure the deferred payments of the purchase money, in which there appeared the following provision:

· "During the continuance of this trust I agree to pay all taxes, special assessments, or other liens of like character that may be levied or assessed against the real property herein conveyed, as the same becomes due."

The Smith heirs answered the bill and set up a tax deed to R. O. Smith, conveying said land to him, dated April 6, 1914, and averred that they inherited the land from the said R. O. Smith.  On July 5, 1920, an answer was filed by the Burroughs Land Company in which no objection was raised to its being sued on its warranty, and averring that, under the provisions of the deed of trust executed in its favor by complainant, it was the duty of complainant to have paid the taxes for the year 1913 and thereby avoided the sale under which the Smith heirs claimed.

While this court was pending, the deed of trust from appellee to the Burroughs Land Company was foreclosed, and on November 27, 1920, the trustee conveyed said land to N. A. Phipps, the secretary of said land company. Thereafter, the relation of vendor and vendee having been severed by this foreclosure, and conceiving that the title to said land was in the state of Mississippi by virtue of the tax sale made to the liquidating levee board on May 12, 1870, the appellee obtained a patent to said land from the state of Mississippi, dated December 18, 1920, and for which he paid the sum of fifty dollars.  Subsequently, on December 22, 1920, an order was obtained permitting the complainant to file a supplemental bill, and on April 21, 1921, the complainant filed a supplemental bill in which he deraigned his title substantially as in the original bill, except he omitted all reference to the deed from the state of Mississippi to N. T. Burroughs, dated July 31, 1885, and he set up the title acquired by him from the state of Mississippi on December 18, 1920.

The Burroughs Land Company did not demur or plead in abatement, but on the 12th of October, 1921, it filed its answer, not sworn to, in which the only objection interposed to its being sued on its warranty, or to the filing of

the supplemental bill setting up a title acquired after the original bill was filed, is contained in the following averment:

"Defendant would further show that the complainant is undertaking to obtain a judgment or decree against it on an alternative prayer before the claim of the defendants Smith is settled and adjudicated by this court, and that the defendant Burroughs Land Company is a nonresident corporation, and has no interest in this suit, and should not, at this time, be made a party to the same. Wherefore, the defendant the Burroughs Land Company, by way of abating this suit against it, hereby enters its plea in abatement to the same, for the reasons above given."

On the final hearing, it was agreed that the complainant had paid to the defendant Burroughs Land Company, on the purchase price of the land in controversy, the sum of three hundred twelve dollars and fifty cents, and a final decree was entered holding that the complainant acquired no title whatever by virtue of the deed from the Burroughs Land Company, for the reason, among others, that the deed from S. Gwin, state auditor, to N. T. Burroughs failed to show that the provisions of sections 561 and 562 of the Code of 1880 had been complied with. This decree further canceled the claims of all the defendants to said land, confirmed the title acquired by complainant by virtue of the patent from the state of Mississippi, dated December 18, 1920, and awarded the complainant a decree against the Burroughs Land Company, for breach of its warranty, for the sum of three hundred twelve dollars and fifty cents, and from this decree this land company prosecuted this appeal.

In view of the pleadings and the course of the trial in the court below, the only real question presented on this appeal is the liability of the appellant on its warranty contained in the deed executed to the appellee, and the first contention made by counsel for appellant is that there is nothing in this record, either in the pleadings or evidence,

to show that the state of Mississippi ever acquired title to the land; and, since the state of Mississippi never acquired the title which had been vested in the liquidating levee board by virtue of the tax sale of May 12, 1870, there had been no eviction of appellee from the land, and consequently this suit for a breach of appellant's warranty of title cannot be maintained. The original and supplemental bills alleged that the title passed from the liquidating levee board to the state by operation of law, and the answer of appellant admitted that allegation, but counsel now contends that this "was simply a legal deduction—a misconception of the law—and not a statement of fact."

On December 2, 1858, a statute was enacted by the legislature by which there was created and established a general scheme for protecting the alluvial lands of certain counties of the state, and by which there was created the general levee board, which was required to assume the indebtedness of the several local levee boards of the counties composing the district. To effectuate this scheme, this general levee board was authorized to issue scrip; a direct tax was levied on the land in the district, and provision was made for the collection of this tax. Prior to 1867 this general levee board had assumed and incurred large debts and liabilities, and on February 13, 1867, an act was passed by the legislature creating the liquidating levee board for the purpose of liquidating all outstanding liabilities of the general levee board. Laws of 1867, p. 237. This act imposed a direct tax on the lands of the district, provided for the appointment of a board of commissioners, and also provided an elaborate scheme for refunding and liquidating the outstanding liabilities of the general board.

On November 27, 1865 (Laws 1865, chapter 1) an act was passed by the legislature creating the board of levee commissioners for Bolivar, Washington, and Issaquena counties, generally known as the ten-cent levee board, and on March 17, 1871 (Laws 1871, chapter 1) an act was passed

creating the levee board of the state of Mississippi district No. 1, having jurisdiction over the counties of Tunica, Coahoma, Tallahatchie, Panola, and Desoto. Under the provisions of the acts creating each of these boards, taxes were levied on the lands of the respective districts, and provision was made for the collection of these taxes by sale of the lands and by conveyances to the respective boards, in default of purchaser.

By an act approved May 13, 1871 (Laws 1871, chapter 2) the board of liquidating levee commissioners was abolished, and in its stead was substituted—"a commissioner to be styled 'a commissioner to liquidate certain outstanding liabilities incurred for levee purposes prior to the first of January, 1862,' who shall hold his office for the term of two years, and until his successor is qualified, and shall be subject to removal, as in said act provided," etc.

On April 11, 1876, the legislature enacted chapter 105, Laws of 1876, providing for the abolishment of the office of liquidating levee commissioner, and for the redemption of lands in the liquidating levee district. Under the provisions of this act, the office of liquidating levee commissioner was abolished, and the auditor of public accounts and the state treasurer were substituted as levee commissioners, and provision was made for the redemption at any time prior to the 1st day of November, 1876, of all lands formerly acquired by the "ten-cent levee board," the "levee board of the state of Mississippi, district No. 1," and the "liquidating levee board." After providing for the redemption of these lands at any time prior to the 1st day of November, 1876, it was provided by section 7 of this act:

"That after the first day of November, 1876, and before the first day of January, 1878, the auditor may sell and dispose of such lands, to any persons desiring to purchase the same, on the same terms as are provided for the redemption thereof in the sixth section of this act," etc.

By section 13 of this act of 1876 it is provided: "That if any of the lands mentioned in this act shall not be redeemed or purchased as herein provided for, on or before the first day of January, 1878, no further time for redemption shall be allowed, and the title thereto shall be vested in the state of Mississippi, and no action in law or equity shall be maintained, in any court of this state, either against the state of Mississippi or any grantee or donee from the state of Mississippi for the recovery of such lands," etc.

This act of April 11, 1876, has been considered by this court several times, and in the case of *Shotwell* v. *Railroad Co.,* 69 Miss. 541, 11 So. 455, it was expressly decided that the title to the lands formerly acquired and held by the levee board of the state of Mississippi, district No. 1, was vested in the state by this act, the court there saying:

"From all this, it is apparent that the provision for vesting the lands purchased for taxes in the board was simply as a means to secure the 'charges and assessments' imposed by the eighth section of the act, which constituted a 'trust fund' for creditors. That could not be impaired; but it was competent for the state to change the officials to administer the trust, and to divest the title of the lands as to the levee board and vest it in itself, in the way in which it was done by the thirteenth section of the act of April 11, 1876, cited above."

Later this court, in the case of *Railroad Co.* v. *Buford,* 73 Miss. 494, 19 So. 584, had before it the question as to whether the title of the ten-cent levee board—that is to say the "board of levee commissioners for Bolivar, Washington, and Issaquena counties"—became vested in the state by virtue of the act of 1876, and the court there said:

"The sale on the 15th of April, 1867, vested the title in the ten-cent levee board, and the alleged sales thereafter to the liquidating levee commissioners, and to the state in 1872, were void (*Shotwell* v. *Railroad Co.,* 69 Miss. 541), and, under the provision of the act of April 11, 1876 (Laws

of 1876, p. 166), this title was vested in the state (*Shotwell* v. *Railroad Co., supra*)."

The provisions of the act of April 11, 1876, with reference to the lands formerly acquired by these three boards are the same, and the language of the court in the cases of *Shotwell* v. *Railroad Co., supra,* and *Railroad Co.* v. *Buford, supra,* holding that the lands of the ten-cent levee board and the No. 1 board were vested in the state under the provisions of this act, applies with equal force to the lands formerly held by the liquidating levee board, and we are clearly of the opinion that the title to the land here in question, which was vested in the liquidating levee board by the sale of May 10, 1870, was subsequently vested in the state of Mississippi by the act of April 11, 1876.

The next question presented for consideration is whether N. T. Burroughs acquired the state's title by virtue of the alleged deed to him from S. Gwin, auditor, dated July 31, 1885. This deed was executed under the provisions of section 562 of the Code of 1880, which reads as follows:

"The auditor shall make a statement on each conveyance so made by him, of the amount of state taxes, and damages thereon, and of the amount of county taxes and damages thereon, and of any other taxes and damages thereon, and the amount of his fee and commissions, in the transaction, and shall present such conveyance, thus prepared, to the state treasurer, who shall enter in a well bound book, to be kept as a record of his office, the description in the conveyance of the land conveyed and the name of the grantee, and the amount of state and county or other taxes and damages, and the fees and commissions of the auditor, as stated on said conveyance; and said treasurer shall mark such conveyance 'registered' and subscribe such marking with his official signature and seal, and return such conveyance to the auditor, and such conveyance shall not be valid unless it has been dealt with as herein required."

The deed from S. Gwin, auditor, which was objected to when offered in evidence, does not contain the essential indorsements required by this section to give it validity, and, since this deed was void, the appellant had no title to convey at the time it executed its warranty of title. That a deed executed under the provisions of section 562 of the Code of 1880, and which does not contain the indorsements required by the section, is void was expressly decided in *McLemore et al.* v. *Anderson,* 92 Miss. 42, 43 So. 878, where the court said:

"It nevertheless clearly appears that the auditor's deed in this case, whether it be the original deed or a certified copy, did not contain the essential indorsements required specifically and expressly by section 562 of the Code of 1880. The failure of such deed to show these indorsements, by the express terms of the statute, made the auditor's deed absolutely void. This error is so fundamental, resulting directly from the express and positive provision of the statute law, that we do not think the failure to object to it in the court below material, and the objection can be made here for the first time. The objection is not one which goes to mere irregularity. It is one which cuts up by the roots the foundation of appellees' title, as being made absolutely null and void by the statute law. This court has no power to render nugatory any positive declaration of the statute (section 562 of the Code of 1880) that a deed like this shall be absolutely void."

It is next contended that, as against appellant, the suit was premature inasmuch as it sought relief on the warranty, only in the event that the court should decree the tax title of the Smith heirs to be valid; and further that the supplemental bill was based upon an entirely new title—the title acquired from the state by appellee December 18, 1920—which was some time after the original bill was filed.

These objections were not presented in any proper manner in the court below, but are raised for the first time in

this court by counsel, who was not connected with the cause
in the court below. The only objection made in the court
below that the suit was prematurely brought, as against
the appellant, is found in a paragraph of appellant's an-
swer which is denominated a plea in abatement, but nei-
ther this alleged plea in abatement nor the answer of
which it was a part was sworn to, and, as said in *Beck* v.
*Beck,* 36 Miss. 72:

"As to the plea in abatement, it is laid down that the
same strictness is applicable to such pleas in chancery,
as at common law. Story Eq. Pl., section 723. Testing
the plea in this case by the rules of the common law, it is
insufficient in at least two . . . respects: First, it is
not sworn to. 1 Chitty Pl. 496."

In addition, since appellant proceeded to trial on the
merits on the bill and answer without presenting this al-
leged plea and securing a ruling thereon in the court be-
low, it must be considered as having been waived. We think
it is apparent from the record and the course of the trial
in the court below that it was the intention of the attor-
neys for all parties to settle the rights of all parties in
this one suit, and—"This court should in every instance
where it can possibly be done, confine its action to a re-
view of the case as it was tried below, and should never
tolerate objections made here for the first time, if they
were such as could have been waived by the agreement of
the parties, either express or implied from their conduct
on the trial before the jury, or otherwise." *Binns* v. *Stokes,*
27 Miss. 239.

Finally it is contended that, since appellee only expended
the sum of fifty dollars to acquire the paramount title, this
is the measure of his relief, and consequently that the de-
cree awarding him the amount which he had paid appel-
lant for the land was erroneous.

Where a vendee is in possession under the title conveyed
by the vendor, and the relation of vendor and vendee still
exists, the measure of damages for a breach of warranty

is the amount which the vendee has been or will be forced to expend to protect his possession and perfect his title, not in excess of the amount of the purchase price and interest, but at the time this appellee acquired the title from the state he was not in possession of the land under appellant's warranty of title.  Prior to the time appellee acquired the state's title, whatever title he had formerly acquired from appellant had been divested by virtue of the sale under the deed of trust and the relation of vendor and vendee had been severed, and the appellee was then under no obligation to diminish the damage that would accrue from a breach of the warranty by purchasing the outstanding title, and the purchase of this outstanding title did not inure to the benefit of appellant on its warranty.

Under the circumstances, the decree of the court below allowing the appellee to recover the amount which he had paid to appellant for a void title was correct, and the decree will be affirmed.

*Affirmed.*