JORDAN v. W. C. GRIFFIN LAND CO.

(Division B. Oct. 1, 1923.)

[97 South. 513. No. 23391.]

EVIDENCE. *Surrounding facts admissible to show error, where tract book and patent conflict as to lands conveyed.*

In a contest affecting titles to lands derived through the state, where one party introduces entries on a tract book made by the secretary of state under the acts with reference to swamp and

overflowed lands, to show a grant from the state, and where
the other offers the original patent, executed by the governor
and secretary of state to such entryman, and these records are
conflicting and contradictory, the court may receive in evidence
and consider all the surrounding facts existing at the time, if
available, and from all the evidence so introduced may determine
where the mistake or error was made. The facts in evidence
in the present case considered, and show that the error was
made by the secretary of state in making the entries on the
tract book, and that the patent shows the correct land granted
by the state.

APPEAL from chancery court of Forrest county.

HON. V. A. GRIFFITH, Chancellor.

Suit by the W. C. Griffin Land Company against F. H.
Jordan. Decree for complainant, and defendant appeals.
Reversed and dismissed.

*D. E. and C. W. Sullivan* and *Davis & Hathorn,* for appellant.

A certified copy of the tract book and a certified copy
of the patent were introduced in evidence and were in
hopeless conflict as to the Southeast quarted of section 7,
township 2, north, range 13, West. The chancellor adopted
the certified copy of the tract book as the evidence of the
title, and ignored the patent, and made the statement that
in his opinion, if the entry and location were validly
made, it was a matter of indifference as to whether any
patent was ever issued or not. This would certainly be
true if the patent had not been issued and offered in evi-
dence at the trial. This would certainly be true, both
under the statute, section 1961 of the Code of 1906, and
the ruling of the court in the case of *Boddie* v. *Pardee,* 74
Miss. 13, if no evidence to show title had been introduced
at the hearing except the certified copy of the entry in
the tract book, but of course, this was not the case. The
question is now presented to the court whether the en-
tries on the tract book showing that the Southeast quarter
of section 7, township 2, North, range 13, west, was

patented to J. P. Carter, December 5, 1866, would prevail over the recitals in the patent issued to J. P. Carter, dated December 5, 1866, conveying to him all the land mentioned in the tract book, except said Southeast quarter.

We contend first, that the patent will prevail over the entry on the tract book as a matter of law, and, second, that the patent should prevail over the tract book under the facts of record in this case.

On the first proposition, we call the court's attention to the fact that section 4, chapter 14, of the Laws of 1852, approved March 16, makes it the duty of the secretary of state, under the direction of the governor to issue scrip for swamp land in the different counties in which they lie, under certain regulations, and that the script should be governed in all respects by the provisions of the 12th, 13th, 14th, 15th, and 16th sections of chapter 16, Laws of 1852, approved March 15th.

Section 16 of chapter 8, Laws of 1854, approved March 2, 1854, provides that the secretary of state in issuing scrip shall be governed by the fourth section of the Act of March 16, 1852, providing for the reclamation of swamp and overflowed lands, etc. We have already seen that section four of this last-mentioned act refers to sections 12, 13, 14, 15, and 16 of chapter 16, approved March 15, 1852, and that section 15 of this act requires the issuance of patents.

That section 1961 of the Code of 1906 is merely a rule of evidence adopted by the legislature is manifest from the holding of the supreme court in the case of *Holloway* v. *Miles,* 110 Miss. 532, 70 So. 697.

When the tract book and the patent are in harmony, then either or both may be introduced as evidence of title, but when they conflict, as they do in the case at bar, then the patent should prevail over the tract book, because its execution is a much more solemn official act than the entries on the tract book.

The bill of complaint clearly put before the court for decision the question of whether the omission from the

patent of the Southeast quarter of section 7, township 2, north, range 13, West, was a mistake and oversight, and, of course, if such omission was not an oversight or mistake, then it was not intended to convey this land to J. P. Carter, and he did not become the equitable owner by its inclusion in the tract book, but such inclusion in the tract book was a mistake and oversight and the land commissioner was justified in striking it from the tract book and issuing the patent to Mrs. Alleen Camp Hathorn.

There was no other question presented to the court by the pleadings for its decision.

The only title of any kind that J. P. Carter could have obtained from the state was through the patent, and, as already shown, the patent did not include the Southeast quarter of section 7, township 2, North, range 13, West. The title to this subdivision of land, both equitable and legal, was clearly left in the state of Mississippi, and, therefore, the patent from the state to Aline Camp Hathorn to the Southeast quarter of section 7, township 2, North, range 13, West, executed in 1920, vested the legal title in her, and her deed to appellant Jordan vested the legal title in him, and the decree should have been for the appellant. But the chancellor stated in his opinion that a substantial compliance with the law requiring the land to be endorsed upon the warrants was had when the warrants were sent in to the secretary of state, as was shown by the evidence, and that it was the intention of the legislature in enacting that section of the law to provide a scheme of convenience for the operation of the land department. The legislature must have meant something more than the providing of a scheme for convenience in the operation of the land department when it required that the land selected should be endorsed upon the warrant, and the date of the location of the land and the number of the warrant should be entered upon a record by the secretary of state, kept by him for that purpose. The facts of this case illustrate the necessity for complying with the provisions of this law.

The failure to endorse the description of the land on the warrants and the failure to enter upon the tract book the date of the entries and the number of the warrants made this tract book so incomplete that it is not evidence of the entry of this land by J. P. Carter, and especially is this true when the completed patent is offered in evidence, showing this land was not conveyed to J. P. Carter. This is the document about which the chancellor was speaking in his opinion. In this connection see *Burroughs Land Co.* v. *Murphy,* 95 So. 515; *Becker* v. *Columbia Bank,* 112 Miss. 819, 73 So. 798; *Hardy* v. *Hartman,* 65 Miss. 505, 32 Cyc. 925.

*White & Ford,* for appellee.

The state recognized the lands as having been patented to Carter in 1866 up to July, 1920, and during that time collected taxes, except for one or two years when it appears to have been assessed as vacant. No attempt was made by the state to impeach or attack the title thus acquired by Carter. The land commissioner's attention was called (doubtless by Mr. Hathorn) to the fact that the Carter patent as issued did not cover the Southeast quarter. Thereupon, the land commissioner accepted an application to purchase by Mrs. Hathorn and a patent was accordingly issued. There is no question that the land warrants were regularly issued by A. B. Dilworth, secretary of state, nor that they were regularly sold by Myers, Lewis and Bradley, commissioners of Perry county, and that Carter was the lawful owner. There can be no doubt that the lands were granted to Perry county by the state of Mississippi for that is a matter of law.

In this state of facts, the chancellor found, first, that complainant was entitled to a decree because the tract book entry showed that the land in controversy had been patented to Carter, complainant's predecessor in title, and, secondly, he found as a matter of fact that the Southeast quarter had been located upon by Carter, and that

he was entitled to a patent. · In this finding, we submit that the court was abundantly correct. The chancellor in his decision called attention to section 1961, Code of 1906. On that section there appear to be two court decisions: *Boddie v. Pardee,* 74 Miss. 13, where the party claiming the land was able to show only a tract book entry, the court holding that this was insufficient, and *Halloway* v. *Miles,* 110 Miss. 532, where the party claiming the land introduced a certificate of entry from the United States Land Office, and the tract book of original entries, and rested his case. Thereupon his adversary showed that at the time the entry was granted, the lands were school lands and therefore not the subject of an entry from the United States. The court therefore held that the entry was invalid, saying that section 1961 announced a rule of evidence, and that while the entry would make out a *prima-facie* title, it could be overthrown by proof of a superior or paramount title. This case did not overrule *Boddie* v. *Pardee,* but on the contrary is entirely in harmony with it.

Irrespective of section 1961, Code of 1906, which has already been discussed, we submit that complainant was entitled to a decree as appears from a number of court decisions now to be noted. *Hester* v. *Kimbrough,* 20 Miss. 259; *Bruce* v. *Jones,* 117 Miss. 208; *Coleman* v. *Hill,* 44 Ark. 452; *Smith* v. *Hollis,* 46 Ark. 17; *Price* v. *Dennis,* 49 So. (La.) 248; *Broussard* v. *Pharr,* 19 So. (La.) 272; *Betz* v. *I. C. R. R. Co.,* 24 So. (La.) 644.

There can be no doubt that the lands herein controversy are swamp and overflowed lands, and we do not understand opposing counsel to make any contention that they were not granted by the state of Mississippi to Perry county under the Act of 1852. An interesting discussion of the history of swamp land legislation is found in *Jackson* v. *Dilworth,* 39 Miss. 772; *Clement* v. *Anderson,* 46 Miss. 481; *Henderson* v. *Blari,* 102 Miss. 641.

The general rule as to the effect of the location of land scrip where no patent is issued is laid down in 32 Cyc. page 922.

Pages of appellant's brief are devoted to a discussion of their contention that there being a conflict between the patent and the tract book entry, the former should prevail. In this connection they review the history of section 1961, Code of 1906, and the substance of their argument, as we see it, is that section 1961 constitutes a rule of evidence and that while the tract book entry makes out a *prima-facie* case, the same may be overthrown by evidence that it was wrong or by other evidence showing an outstanding paramount title. To this we agree to a great extent, but the argument is sufficiently answered by the consideration that the record does not show any paramount outstanding title nor any evidence impeaching the correctness of the tract book entry.

Counsel state frequently that where the patent and tract book conflict, the former should prevail, but they furnish us no authority to support this assertion.

The endorsement of the land description on the back of the warrant was a merely clerical matter that did not go to the merits. The state wanted to sell the land, get the revenue arising from a sale thereof, put the lands in the hands of individuals so that they might be developed, and get them on the tax roll so that they would yield continuous revenue to the state. It would be carrying bare technicality too far, we submit, to hold that a sale should be avoided by the omission of a mere clerical act like this. It would be on a parity with attempting to invalidate a deed between individuals because the grantor simply used his initials in signing his name instead of writing out his name in full. It is manifest that the endorsement of the locaton on the back of the warrant was for the benefit of the state land office and was simply a means of ready reference.

Counsel do not cite any authority on their contention that the entry is void because Carter did not endorse on the back of the warrants the fact that he located them on certain lands. *Becker* v. *Columbia Bank,* 112 Miss. 819, and *Burroughs Land Co.* v. *Murphy,* 95 So. 515, do not touch the point.

*D. E. and C. W. Sullivan, F. C. Hathorn,* and *T. W. Davis,* for appellant, in reply.

Counsel contends, and the court seems to have been confused upon the same case, that this case is settled by the case of *Boddie* v. *Pardee,* 74 Miss. 13, and that the introduction of the tract book certificate from the land office conclusively showed the vesting of title in Carter. This conclusion is based upon a false premise or postulate. Of course, if a patent had not been introduced showing that the land described on the tract book and there shown to have been patented to Carter on December 5, 1866, had not in fact been patented to Carter, and if the bill of complaint had not also alleged that the patent did not in fact contain the land, a presumption would have arisen, upon the introduction of the certificate of the land office that a patent in fact had issued, and defendant would have had to rebut this presumption. But presumptions of this kind always give way to facts, and, when complainant himself alleged in his bill that the land was not in fact patented and when he showed by introducing the patent that the lands in controversy were not in fact contained therein, he destroyed this presumption in his favor and it conclusively appeared and does appear from the record that the land was not patented to Carter. So that, in so far as being evidence of the issuance of the patent is concerned, the presumption that otherwise would have arisen in favor of the issuance of the patent because of the tract book entry was and is destroyed.

It seems to be well settled in Mississippi that a person claiming lands under statutory authority from the state must see to it that the law authorizing him to acquire the lands, is complied with. *Murdock* v. *Chaffee,* 7 So. 219, 67 Miss. 740. See also *Cucomongo Fruit Land Co.* v. *Moir,* (Cal.), 23 Pac. 359; *Price* v. *Braver* (Cal.), 15 Pac. 356; *McKenzie* v. *Brandon et al.* (Cal), 12 Pac. 428.

Argued orally by *F. C. Hathorn* and *D. E. Sullivan* for appellant and *E. J. Ford* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

W. C. Griffin Land Company filed a bill against F. H. Jordan to cancel the claim of F. H. Jordan to the North West quarter of the South East quarter and the South East quarter of the South East quarter of section 7, township 2, N., range 13, W., claiming that the complainant was the owner of the said lands and deraigned its title from the United States of America to the state of Mississippi under the Swamp and Overflowed Land of Congress of the 28th of September, 1850 (U. S. Comp. St. sections 4958-4960), and alleged that the state of Mississippi, by legislative enactment approved March 16, 1852, by an act entitled "An act for the reclamation of swamp and overflowed public lands and for the improvement of the navigation of the various rivers and streams in this state," granted said land to the county of Perry in the state of Mississippi; that said act, otherwise known as chapter 14, Laws of 1852, further provided in section 2 thereof that:

"The boards of county police shall appoint a commissioner or commissioners not to exceed three in number, to be styled the 'commissioners of swamp land.'"

It further sets out the provisions of the said act, and also some of the provisions of chapter 8, Laws 1854, and alleges that in pursuance of said acts the secretary of state issued and delivered to the swamp land commissioners for Perry county land warrants for Perry county Nos. 174 to 200, inclusive, and land warrant No. 173, which had partially been taken up, setting out the form of said land warrants, and alleging that prior to the 15th day of November, 1866, one J. P. Carter had become the owner for valuable considerations of the above-mentioned warrants, and was entitled to locate and select any unappropriated and overflowed lands in the county of Perry to the extent of the acreage called for by the said warrants; that on the 15th day of November, 1866, the lands involved in this suit were unappropriated swamp and

overflowed lands lying and being in the county of Perry, in the state of Mississippi; that on said day the said Carter, the holder and owner of said warrants, together with a large number of other warrants, applied to the secretary of state for the issuance of a patent to him for the lands above described, and that he, the said Carter, had previously located a part of the land warrants on the land above described and selected the same; and that Carter thereby became entitled to the issuance of a patent, being the equitable owner thereof, through the warrants aforesaid and through the location of the lands above described. It is further alleged that the secretary of state, in pursuance of the request, issued the said Carter a patent, signed by the Governor and sealed with the great seal of the state, but that through inadvertance and oversight the lands were not conveyed by specific description, although it was the intention of the parties to said instrument that the said lands be included in the said patent, and that they were omitted by oversight and clerical error, as well as by mutual mistake, from said patent; that thereafter the tract book of the state of Mississippi as well as the swamp land records entered, and notes by the respective officer charged with the custody and keeping of the same, as follows:

| Description of Tract. | Acres. | Name of Locator. |
|---|---|---|
| W½, SE¼, NE¼ of NE¼ and SW¼ of NE¼, Sec. 7, township 2, north, range 13, west. | 612.33. | J. P. Carter. |

| Scrip. | To whom Patented. | Date of Patent. |
|---|---|---|
| Perry County. | J. P. Carter. | Dec. 5, 1866. |

And that since said time the state has regularly collected and received taxes on the lands, and the same have been assessed to Carter, his grantees and successors in title.

The complainant then deraigns his chain of title to the said lands, and then alleges that on the 10th day of January, 1920, the state undertook to issue a swamp and

overflowed patent for said lands to Aline Camp Hathorne, which patent was placed of record in Forrest county, Miss., and said Hathorne, through his attorney in fact, conveyed the lands to the defendant. It is further alleged that the patent issued to Hathorne is null and void, and that the deed to Jordan is likewise invalid, and does not convey title to the said defendant, and that their existence upon the records constitutes a cloud upon the complainant's title, which he is entitled to have canceled, annulled, and set aside.

The bill was answered by the defendant, in which answer the title of the complainant is denied; the answer admitting the vesting of title in the State of Mississippi, but denying that title passed to Carter, and denying that Carter had located said lands or become entitled to a patent, and denying that they omitted from the patent by inadvertence or oversight. The answer being elaborate, it will not be further set out, but it is sufficient to place in issue the principal allegations of the bill.

It appears that on or about the 15th day of November, 1866, J. P. Carter wrote to the then secretary of state the following letter:

"I send you by express Perry county land warrants to the amount of twenty thousand one hundred and sixty acres (20,160) or 126 (only 125) pieces of scrip, each one hundred and sixty acres. I send you also by express the numbers of land in Perry county upon which I wish to place the scrip. You will please send me by express the patents. I wish the land in each township to be in a different patent; that is, I wish the land I enter in T. 1 S., R. 10 W., to be in one patent, and T. 1 S., R. 11 W., to be in another patent, etc. Send the patents to me by express to this place and direct in care of G. B. Dantzler. Should you wish any further information in regard to this thing, please let me know immediately at this place, directing as above."

With this letter was sent a list for various lands, including lands in section 7, township 2 N., range 13 W., as to which section the list reads as follows:

"Section 7, all that is vacant, 560 acres."

Numerous other bodies of land in the list are similarly described, "all that is vacant," followed by a designated number of acres.

Section 7, township 2 N., range 13 W., was a large-sized section, containing six hundred ninety-nine and fifty one hundredth acres, of which six hundred twelve and twenty-two hundredth were state lands at the time the list was filed. It appears that the application for lands in township 2, range 13 W., as shown in the record, made out by Carter, was four thousand one hundred and sixty acres, and it appears from the record that the patent in the record contains two and twenty-one one hundredths acres more than this amount of land in the said township and range. It appears, however, that the land in section 7 actually conveyed by the patent was less than five hundred and sixty acres. It further appears in the record that the specific descriptions of land contained in the patent were less than the number of acres noted thereon by the secretary of state.

The chancellor found for the complainant, and entered a decree canceling the defendant's deeds, from which this appeal is prosecuted.

The chancellor proceeded upon the idea, as reflected from his opinion, the case of *Boddie* v. *Pardee,* 74 Miss. 13. 20 So. 1, had the effect of making the tract book of the secretary of state's office the exclusive evidence, and that it was superior to the patent. While the appellant contends that the tract book was not properly made up, because the warrants which were introduced in evidence did not have the location of the lands to which they were to be applied noted on the warrant itself, as required by section 15, chapter 16, Laws of 1852, wherein it is provided:

"Which location shall be noticed upon the warrant or certificate in the following words, to wit: 'I, A. B., have this day located the within warrant upon the ———

quarter (or lots, as the case may be,) of section ————,
of township ————, of range ————, in the county ————.
[Signed] ————, Holder.' "

The appellant also contends that the statute involved
in the case above mentioned, *Boddie* v. *Pardee*, 74 Miss.
13, 20 So. 1, is a mere rule of evidence, and that, as both
the patent and the tract book were introduced in evidence,
the patent was the controlling and superior muniment of
title, and consequently title never passed to Carter, and
cites in support thereof *Halloway* v. *Miles*, 110 Miss. 532,
70 So. 697.  Appellant also contends that the failure to
indorse the land upon the warrant according to the act
of 1852, supra, made the entry on the tract book of the
lands in controversy invalid, citing *Hardy* v. *Hartman*,
65 Miss. 505, 4 So. 545, *Becker* v. *Columbia Bank*, 112 Miss.
819, 73 So. 798, and *Burroughs Land Co.* v. *Murphy*, 131
Miss. 526, 95 So. 515.

In our opinion both the patent and the tract book were
admissible in evidence, and as the tract book could be
introduced in the absence of the patent, and in the ab-
sence of the patent would be primary evidence of the title
of the complainant, yet the patent is also admissible, and,
as its provisions are contrary to the tract book, that the
surroundings may be looked to, and the question decided
in the light of all the facts in the record, without deciding
whether the patent is superior to the tract book, where
both are introduced, or not.  The patent was issued to
Carter in 1866, was placed of record, and he was intro-
duced as a witness, and testified that whenever he sold
lands he went to the patent for the description, and if
it was not in his patent that he did not sell it, and that
he did not claim lands that were not in his patent; that
he had supposed the secretary of state embraced in the
patent all the lands which he was entitled to receive on
his application, and that he had given a quitclaim deed
for the consideration of one dollar for the purpose of
enabling Griffin to perfect his title; that if he had known
that he was the owner of the lands he would not have

conveyed them for the consideration of one dollar but would have sold them for their real value. He admitted, also, that he told Hathorne, that he did not claim any of the lands that were not embraced in his patent. He also testified that he gave Hathorne a quitclaim for a consideration of one dollar. He further testified that the records were burned in Perry county in 1878, and that he had some recollection of making Griffin a deed prior to that time. Some of the lands embraced in the patent to Carter were sold for their value, and it appears that in 1905, Carter gave a quitclaim to the lands in controversy, not with any idea that he was owner of the lands, but with the idea of enabling other persons to perfect their own titles.

We think, in view of all the facts and circumstances in the record, that the entry of the lands in controversy upon the tract book by the secretary of state was a mistake or error, and that the state never parted with that title to Carter. It follows, from what we have said, that the judgment of the court below will be reversed, and a decree will be entered here dismissing the bill.

*Reversed and dismissed.*